April 2, 1914. The opinion of the Court was delivered by
The petition herein alleges, that both the petitioner and C.P. Sims, Esq., are now and at the times hereinafter mentioned, were members of the bar, duly admitted by the Supreme Court to practice law in this State, residing and having offices in the city of Spartanburg, in said county and State.
After alleging that C.P. Sims, Esq., had made certain specified charges against said petitioner whereby "the integrity and professional character and conduct of your petitioner has been falsely, unjustly, wrongfully and wilfully assailed, without any reason, cause or excuse," prayed that inquiry be made into the truth of the said allegations by this Court.
The petitioner also prays "that the professional conduct of the said C.P. Sims, Esq., be investigated by this honorable Court, as to certain matters touching the professional practices, and the integrity and character of the said C.P. Sims, Esq., be examined into by this honorable Court, and prefers, upon information and belief, the following charges, to wit:
(a) "That the said C.P. Sims, Esq., wilfully attempted to impose upon, mislead and deceive this honorable *Page 39 
Supreme Court in the case of State v. John Shelton, reported in Volume 77 of the South Carolina Supreme Court Reports, page 74 (57 S.E. 1111), and thereafter attempted to procure I.C. Blackwood, Esq., also an attorney of this bar, to secure from R.A. Hannon, Esq., also an attorney of this bar, a false affidavit for the purpose of further deceiving and misleading the said honorable Supreme Court, as shown by affidavits on file in the Supreme Court, in the case of State v. John Shelton, made by C.P. Sims, Esq., on the ninth day of July, 1906, and on the twenty-eighth day of February, 1907, and the affidavit of Honorable T.S. Sease, Solicitor (now Circuit Judge), made on the twenty-ninth day of April, 1907, and further the affidavits of I.C. Blackwood, Esq., and R.A. Hannon, Esq., both of whom are attorneys of this honorable Court, made on the eighteenth day of May, 1907, the last two affidavits not being before the Supreme Court in the hearing of the said case, copy of these affidavits being hereto attached and made a part of this petition. (Exhibits 1-A, 2-A, 3-A, 4-A, and 5-A.)
(b) That the said C.P. Sims, Esq., did solicit a suit against the city of Spartanburg, by going to Mrs. R.F. Ferguson and her husband, R.P. Ferguson, and requesting them to bring suit against the city of Spartanburg, along with others, and also fraudulently collected certain moneys from the said Mrs. R.P. Ferguson, on account of said alleged action, and thereafter fraudulently failed to bring any suit, as shown by affidavits of Mrs. R.P. Ferguson and Richard P. Ferguson, hereto attached and made a part of this petition. (Exhibits 1-B and 2-B.)
(c) That the said C.P. Sims, Esq., solicited one Richard Jackson to employ him to defend said Richard Jackson and his wife, Henrietta Jackson, before the Court of General Sessions, for Spartanburg county, and collected a fee of ten ($10.00) dollars therefor, after taking said employment, although advised that the said Richard Jackson *Page 40 
had already employed another attorney to defend him, and failed and refused to defend the said Richard Jackson and his wife, Henrietta Jackson, at the next term of Court, leaving them without an attorney, although he had been fully paid according to his contract and was to defend the same, as shown by affidavits of the said Richard Jackson and his wife, Henrietta Jackson, hereto attached and made a part of this petition. (Exhibits 1-C and 2-C.)
(d) That the said C.P. Sims, Esq., solicited one Tom Jackson and L.M. Jackson to employ him to bring an action against the town of Wellford, touching a certain fine imposed upon the said Tom Jackson by the town of Wellford, and collected a fee of ten ($10.00) dollars therefor, wilfully refused to bring said action, and took no steps to bring such action, well knowing at the time he solicited the fee and employment that no cause of action existed against the town of Wellford, as set out by the affidavits of Tom Jackson, L.M. Jackson, Alice Jackson, and W.G. Querry, hereto attached and made a part of this petition. (Exhibits 1-D, 2-D, 3-D and 4-D.)
(e) That the said C.P. Sims, Esq., solicited employment by one Belton R. Dryman, in a suit against the Southern Railway Company, and secured one D.H. Hunsinger to go and intercede with the said Belton R. Dryman to employ the said C.P. Sims, Esq., promising and agreeing to divide his fee with the said D.H. Hunsinger, which he fraudulently refused to do, well knowing that the same was illegal and unprofessional, as set out by the affidavit of D. H. Hunsinger, attached hereto and made a part of this petition. (Exhibit 1-E.)
(f) That the said C.P. Sims, Esq., accepted a fee of ten ($10.00) dollars from Mrs. M.E. Thomas to secure a pardon for her son, Baxter Thomas; after seeing the said Mrs. M.E. Thomas and securing her money aforesaid, he did wilfully and fraudulently desert the cause of his client, and advised the Governor of the State not to *Page 41 
issue the pardon, in breach of his duty to his client, as shown by affidavit of Mrs. M.E. Thomas, hereto attached and made a part of this petition. (Exhibit 1-F.)
(g) That the said C.P. Sims, Esq., visited the county jail frequently, soliciting criminal business and solicited one J.B. Blanton, a United States prisoner in the county jail for said county and State in February, 1911, to employ him to secure a pardon for the said J.B. Blanton from the President of the United States, and got the said J.B. Blanton to pay him a fee of ten ($10.00) dollars therefor, and then wilfully deceived and betrayed the said J.B. Blanton, as shown by affidavit of the said J.B. Blanton, hereto attached and made a part of this petition. (Exhibit 1-G.)
(h) That the said C.P. Sims, Esq., solicited suit of one Robert Whitesides against the Southern Railway Company and that, when told by the said Robert Whitesides that he had already retained attorneys for said suit, he told the said Whitesides that he could get the money for him simply by writing a letter, all of which was unethical and highly improper for a member of the bar, as set out in the affidavit of Robert Whitesides, hereto attached and made a part of this petition. (Exhibits 1-H and 2-H.)
(i) That the said C.P. Sims, Esq., solicited the employment of Mrs. W.J. Fonville, to bring action against the Southern Railway Company for the death of her husband, and advised her by letter that he was in position to secure for her ten thousand ($10,000.00) dollars, well knowing that he had no connection with the Southern Railway, and did not represent them in any manner whatsoever, all of which was highly improper and unprofessional for a member of the bar, as set out by letter from the said C.P. Sims, Esq., to Mrs. Fonville, hereto attached and made a part of this petition. (Exhibit 1-I.)
(j) That the said C.P. Sims, Esq., bargained for the sale of a house and lot in the city of Spartanburg to Dr. Webb Thompson, and after closing the trade for said sale, *Page 42 
secretly executed a mortgage on the same house and lot for the sum of fifteen hundred ($1,500.00) dollars, with the purpose of keeping said mortgage off record for thirty-nine days, and until after the title of the same had been examined by attorney for Dr. Webb Thompson and passed, and then to record said mortgage and defraud the said Webb Thompson out of fifteen hundred ($1,500.00) dollars, as shown by affidavit of Dr. Webb Thompson, hereto attached and made a part of this petition. (Exhibit 1-J).
(k) That the said C.P. Sims, Esq., having for collection an account of Charlotte Brick Company against W.P. Maner Company, of Spartanburg, South Carolina, presented the said account to the said debtors, and accepted certain amounts of lumber and building materials, agreeing to pay the said account to the said Charlotte Brick Company, which he wilfully and fraudulently refused to do, as shown by letters of the Charlotte Brick Company, and affidavits of the account hereto attached and made a part of this petition, and that of W.P. Maner. (Exhibits 1-K, 2-K, 3-K and 4-K.)
(l) That the said C.P. Sims, Esq., secured a fee of ten ($10.00) dollars from Harrison Harrison, attorneys for the O.K. Stove and Range Company, for the purpose of bringing suit against one W.H. Burris in the town of Union in said State, and wilfully refused to file suit and did fail to file suit, giving as his reason that there was some legal question as to appointment of magistrates, and has never brought said suit or tried to collect said debt, as shown by affidavit of J. Frost Walker, Esq., and B. O. Harrison, W.H. Burris, and letters of Sims and Von Nunes, hereto attached and made a part of this petition. (Exhibits 1-L, 2-L, 3-L, 4-L, 5-L, 6-L, 7-L and 8-L.)
(m) That the said C.P. Sims, Esq., fraudulently retained twenty ($20.00) dollars collected for N.L. Hawkins, a client of the said C.P. Sims, Esq., and denied to said Hawkins that he had collected the same, as shown by *Page 43 
affidavits of N.L. Hawkins and J.H. Simmons (Exhibits 1-M and 2-M), and that Magistrate R.J. Gantt is a witness therein.
(n) That the character and reputation of the said C.P. Sims, Esq., for truth, honesty and integrity are bad and unworthy of a member of the bar of this honorable Court, as shown by affidavits hereto attached, to wit: Magistrate A.H. Kirby, John F. Floyd, W.B. Harrison, B.T. Earle, C.M. Justice, W.W. Lancaster, Thad. C. Dean, S.C. Thomas et al., who are not attorneys, and, further, the affidavits of T.M. Lyles, R.A. Hannon, L.W. Perrin, I.C. Zimmerman, J.B. Gwynn, C.E. Daniel, L.K. Jennings and other members of this bar.
(c) That by reason of his unprofessional conduct heretofore the said C.P. Sims, Esq., was, for a while, suspended from practicing law by one of the honorable Circuit Judges of this State, while holding Court at Spartanburg.
The following are named as attorneys representing the petitioner: Ralph K. Carson, L.K. Jennings, L.W. Perrin, J.H. Browne, Thomas W. Lyles, J.B. Gwynn, S.G. Finley, J.W. Nash, R.H. Hannon, C.E. Daniel, H.E. Ravenel, J.C. Otts.
The Court ruled that in this proceeding, the investigation would be confined to the alleged charges of unprofessional conduct against C.P. Sims, Esq.
We shall not undertake to pass, specifically, upon every one of the charges hereinbefore mentioned, as it would subserve no useful purpose.
First. We find as a fact that C.P. Sims, Esq., was unquestionably guilty of the charge of soliciting business as an attorney, in a manner violative of professional ethics. It is only necessary to refer to the testimony, taken upon the trial of this case (which, of course, will be filed with the clerk of the Supreme Court), to show that this finding is fully sustained by the testimony. *Page 44 
 Second. We find as a fact that the charge contained in "f" is fully sustained by the testimony, especially the testimony of John F. Floyd, which was as follows:
Direct examination by Mr. Solicitor Henry:
"Q. Mr. Floyd, you are mayor, I believe, of Spartanburg? A. Yes, sir. Q. Mr. Floyd, do you know anything about this pardon of Mrs. Thomas' boy; did you give her any information about that pardon? A. About a pardon? Q. Yes, sir; attempted pardon of her son? A. Mrs. Thomas came to me last year in regard to Baxter's being on the gang, and wanted to get a pardon for him, and I asked Mrs. Thomas, who was looking after her interest, and she said Sims, and I told her: `Don't you let him look after it.' And she said: `I have already paid him for getting a pardon, and I want you to tell me what to do.' And she said: `You go to Columbia often.' And I said: `The next time I go to Columbia I will take the matter up with Governor Blease.' And I called on Governor Blease and told him: `Governor, what are you going to do about Baxter Thomas' pardon? And the Governor ran his hand through his hair and said: `I got a letter from Sims saying not to pardon Baxter, he is a sort of a bad case.' And he brought out a letter from Sims, and I saw a letter from Sims to Governor Blease, advising him not to pardon him. Q. Did you advise Mrs. Thomas of that? A. I went back and told Mrs. Thomas that Sims was double-crossing her. She said: `What is that?' I said: `He advised you one thing and told the Governor another thing. He told the Governor not to pardon this boy.' And she said: `I am going to take a stick and go up there and whale him out of his office.' And I said: `That would be a pretty good way to treat him.' Mr. Justice Hydrick: Mr. Solicitor, there is one question I would like to ask Mr. Floyd. You say, when the Governor got his file out and showed you this letter, you saw the letter yourself? The witness, Mr. John F. Floyd: I did; yes, sir. Mr. Justice Hydrick: You know *Page 45 
Mr. Sims' handwriting? The witness, Mr. Floyd: Yes, sir. Mr. Justice Hydrick: Was it his handwriting? The witness, Mr. Floyd: It was."
Third. We are constrained to find as a fact, that the charge in "n" is sustained by the testimony.
We feel, however, that the conduct of the respondent was due, in large measure, to his misconception as to the nature of the legal profession, and of his duties to the Court, to his brother lawyers, and to his clients, as will be seen from the testimony of Robert T. Gantt, Esq., who was called as a witness by the respondent:
Cross-examination by Mr. Solicitor Henry:
"Q. What is his general reputation? Do you know his general reputation in Spartanburg? A. I think so, sir. Q. Well, now, as to truth and veracity as a man — you spoke about him only as an attorney; is that reputation good or bad? A. Well, sir, it is hard to say. He is a man of very decided character, and his friends are very loyal to him. His enemies speak very bitterly about him, very harshly. You strike his friends and they are very loyal to him. And I hear his enemies were very hard on him. If I am permitted to state it generally, I want to state this, that Mr. Sims came to the bar at Spartanburg after he was grown. He didn't have the benefit of legal education, and when he first came there his ideas of judicial ethics were very crude. A man who has not had the legal education, legal training, as the bar knows, sometimes don't get the right idea as to the obligations that they owe to brother attorneys, and that they owe to the Courts, and that he looks more or less upon the practice of law as a trade, rather than a profession. And that has been the defect in Mr. Sims' career from the beginning."
The foregoing findings of fact show that C.P. Sims. Esq., is unfit to practice law as an attorney. The Court, however, is of the opinion that the respondent should be allowed the opportunity to reform and be reinstated, upon *Page 46 
proof that he has become duly qualified in every respect, to practice law as an attorney.
It is therefore the judgment of this Court that C.P. Sims, Esq., be indefinitely suspended and forbidden to exercise the rights and duties of an attorney in the Courts of this State with the privilege, however, to move before this Court for reinstatement after the expiration of two years, upon satisfactory proof that he has reformed, and at that time is duly qualified in every respect to practice as an attorney at law.