[S. F. No. 14090. In Bank.—April 1, 1931.]

P. T. HOWE, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Edward J. Cotter for Petitioner.

Philbrick McCoy and Joe G. Sweet for Respondent.

THE COURT.—This is a proceeding to review an order of the board of governors of The State Bar of California recommending that the petitioner be suspended from the practice of law in this state for a period of two years.

There is no substantial dispute as to the facts. The petitioner, now a man of thirty-five years of age, was admitted to practice law in this state in 1917, entered the war, and returned to the practice of law in San Francisco in 1925 after six or seven years' employment in New York City as a claim adjuster for insurance companies. His work in San Francisco for about one year was of a similar character. In 1926 he removed to Los Angeles, where he continued in his employment with a casualty company. The petitioner admits that while he was so employed in Los Angeles he was informed respecting the effort being made by The State

Bar in Los Angeles to curtail the activities of attorneys accepting the services of laymen who solicit from persons injured in accidents the settlement of their claims against alleged tort-feasors or their insurance carriers, and which is commonly known as "ambulance chasing".

Early in January, 1930, the petitioner returned to San Francisco to enter upon an employment with West Coast Claims Bureau pursuant to an arrangement agreed upon in Los Angeles just prior to the petitioner's departure for San Francisco. The West Coast Claims Bureau is the fictitious name of a business owned and operated by several brothers named Rose. This concern has its headquarters in Los Angeles with branches in several other cities, including San Francisco, of which latter branch J. B. Rose is the manager. In the words of the witness J. B. Rose, the sole business of the bureau is to "represent claimants who have been injured through the negligence of some person or persons", including the prosecution of claims for damages arising from death resulting from personal injuries. The method of the bureau's operations, which was known to the petitioner, was that familiarly known as "ambulance chasing". As soon as news of accidents was received at the bureau through the activities of one of its agents, a representative of the bureau was dispatched to obtain the signature of the prospective claimant on a standard form used by the bureau by which the claimant agreed to employ the bureau to settle and collect damages from the alleged tort-feasor and agreed to pay the bureau a sum equal to a percentage, usually fifty, of any amount recovered, the bureau to advance the costs, if any, and to provide competent counsel, if needed, at its own expense. It appeared in evidence that J. B. Rose is the holder of a certificate issued by the insurance commissioner, authorizing him to operate as an insurance adjuster.

The West Coast Claims Bureau occupied a suite of rooms known as 721 Merchants Exchange Building in San Francisco. The petitioner occupied room 715 in that suite, for the use of which, including telephone switchboard, stenographic services and stationery, he paid the sum of $50 a month to the bureau. The entrance to room 715 was customarily through room 721 and the directory in the lobby of the building listed the petitioner's name opposite the

number 721. The petitioner's name did not appear on any door of the suite.

The petitioner's duties in his employment with West Coast Claims Bureau, were to draw the complaint and other pleadings whenever it appeared that suit was necessary to obtain a recovery in any case and, if the case progressed, to conduct the trial thereof. For his services the petitioner was paid by the bureau $25 for each complaint drawn, and in case of trial $100 for each day in court. If other appearances in court were made or other pleadings drawn the petitioner was paid accordingly. Other than as in this paragraph mentioned, the petitioner received no part of the percentages collected by the bureau under its contracts with claimants. In no instance did the petitioner receive a fee from a claimant. Unless a suit were filed the petitioner had no duties to perform, but all of the investigation, examination of witnesses, and negotiation for settlement were conducted by Mr. Rose or his lay employees. The petitioner testified that he had practically no other practice than that involved in his employment by West Coast Claims Bureau.

During the period between January and April, 1930, when the petitioner was employed by the bureau in San Francisco, he filed thirty-three complaints on behalf of injured plaintiffs from whom the bureau had obtained contracts as described. On May 2, 1930, a notice to show cause why he should not be suspended, disbarred or reprimanded, signed by the chairman of the local administrative committee at San Francisco, was served on the petitioner, which was later amended to include thirty-three counts, each based on one of the thirty-three complaints filed by the petitioner, and each alleging in substance that the petitioner had employed another person, to wit, J. B. Rose, to solicit and obtain for him employment as an attorney at law; that the petitioner in each case commenced an action on behalf of the claimant without having been consulted by said claimant; and that the petitioner accepted professional employment on behalf of the claimant with knowledge that the employment was the result of the activities of J. B. Rose, an unlicensed person. In a charge numbered thirty-four the petitioner was accused generally of having entered into the relation of attorney and client with the thirty-three

persons mentioned and of having prepared and filed suits in their names without having first met or consulted with such persons. The petitioner was also accused by count 35 of having dismissed actions instituted by him without authority from or consulting with the clients involved. By count 36 the petitioner was charged with having permitted persons not attorneys to use his name in the practice of the law, and that he had allowed J. B. Rose and other unlicensed persons to practice law in cases where the petitioner appeared as attorney of record. By the last count the petitioner was charged with having allowed J. B. Rose and other unlicensed persons connected with West Coast Claims Bureau to settle cases wherein the petitioner appeared as attorney of record without consulting with or advising his clients respecting such settlements. Several hearings were had before the local administrative committee, which found in addition to facts hereinbefore narrated that the evidence is conclusive that after a complaint was filed by the petitioner he had no further voice in the management or control of the action unless it developed that the case could not be settled without trial, and that settlements in all cases, whether or not complaints were filed, were handled by Mr. Rose.

The committee found that the charges of employment of J. B. Rose to solicit employment for the petitioner as an attorney at law and that the petitioner solicited professional employment through J. B. Rose are not true. But the committee also found that the petitioner commenced an action on behalf of each of the claimants in the thirty-three instances specified without having first been consulted by the claimant and that the petitioner knowingly accepted professional employment which was offered as the result of the activities of J. B. Rose, an unlicensed person, and which was obtained by J. B. Rose, in violation of the rules of professional conduct; that said employment, including dismissals of actions, was controlled and directed by J. B. Rose. The committee found that the petitioner in the thirty-three specified cases permitted J. B. Rose and the West Coast Claims Bureau to use his name in the practice of the law in that the petitioner, after preparing and filing the complaints, permitted said unlicensed persons to take full and complete control of said matters and to settle or otherwise

move with respect thereto, with the exception of the actual conduct of any trial, without consulting the petitioner.

The committee concluded that the petitioner had by his conduct violated rule 10 of the Rules of Professional Conduct (204 Cal. xci) prohibiting the giving of advice by a member of The State Bar relating to the commencement, prosecution or defense of an action at law unless he has been consulted in reference thereto except when his relation to a party or to the subject matter is such as to make it proper for him to do so; that part of rule 3 of the same rules which provides that no member of the bar shall directly or indirectly ''share with an unlicensed person compensation arising out of or incidental to professional employment, nor shall he directly or indirectly aid or abet an unlicensed person to practice law or to receive compensation therefrom; nor shall he knowingly accept professional employment on behalf of a claimant in a personal injury or death case offered to him as a result of or as an incident to the activities of an unlicensed person who for compensation controls, directs or influences such employment''; and subdivision 4, section 287, of the Code of Civil Procedure, which provides that an attorney shall not lend his name to be used as attorney and counselor by another person who is not an attorney and counselor.

■ The board of governors of The State Bar adopted the findings of the committee and recommended that the accused be suspended from the practice of the law in the state of California for a period of two years.

That the facts existed as herein stated is not seriously disputed, but it is the effect thereof as found by the committee which is called into question. ■ First, the argument is offered that inasmuch as J. B. Rose and the West Coast Claims Bureau were the possessors of a license to operate as insurance adjusters, the conduct of the business described is lawful and legal and does not constitute them ''unlicensed'' persons within the meaning of that portion of rule 3 of the Rules of Professional Conduct hereinabove quoted; that the bureau therefore lawfully represented the petitioner as his agent in each of the thirty-three cases specified in the creation of the relationship of attorney and client between the petitioner and the plaintiff in each case. The petitioner relies upon the definition of the term ''adjus-

ter'' contained in section 633e of the Political Code (Stats. 1925, p. 421, as amended; Stats. 1929, p. 1045), as the authority which is claimed to wrap the cloak of legality about the activities of J. B. Rose and the West Coast Claims Bureau. That section provides that ''the term 'adjuster' as used in this section shall include every person, partnership, association or corporation advertising, soliciting business or holding himself or itself out to the public as an adjuster of loss or damage by fire, marine, accident, liability or other loss or damage covered by any policy of insurance issued in or covering risks located in this state, and receiving compensation or reward for adjusting such loss or damage or for the giving of advice or assistance to the insurer or the assured in the adjustment of claims for loss or damage as aforesaid''.

The obvious answer to such a contention is that the language of the foregoing section refers to a person who represents ''the insurer or the assured'' in the adjustment of claims for loss or damage under a policy of insurance. No pretense is or can be made that J. B. Rose or the West Coast Claims Bureau represented any one of the parties to any claim other than, in the words used in the petition herein, ''the injured person, in the investigation, adjustment and settlement of the injured person's claims for damages *against* the person injuring him''. It must remain undisputed that neither the insurance commissioner, nor any body other than the courts of this state, has the power to license persons to practice law. (*Brydonjack* v. *The State Bar,* 208 Cal. 439 [66 A. L. R. 1507, 281 Pac. 1018]. See, also, *Townsend* v. *The State Bar,* 210 Cal. 362 [291 Pac. 837].) Furthermore, the petitioner conceded in the hearing before the board of governors that after a careful study of rule 3 of the Rules of Professional Conduct he was convinced that the term ''unlicensed person'' referred to a person not licensed to practice law, so that any further discussion on this point becomes unnecessary.

The next contention made is that the latter portion of rule 3 of the Rules of Professional Conduct, providing that a member of The State Bar shall not knowingly accept professional employment on behalf of a claimant in a personal injury or death case offered to him as a result of or as an incident to the activities of an unlicensed person who

for compensation controls, directs or influences such employment, contravenes article I, section 2, of the state Constitution and the Fourteenth Amendment of the United States Constitution because, so it is stated by the petitioner, the rule prohibits members accepting professional employment only on behalf of the claimant in a personal injury or death case under the circumstances stated in the rule and thereby grants special immunities and privileges to members who under similar circumstances accept other employment.

■ We are of the opinion that the rule does not violate any constitutional inhibition. It is directed against an abuse which is practiced with respect to a certain class of controversy, viz., on behalf of claimants in personal injury and death cases. The existence of the evil in that class of claims or litigation alone justifies and indicates the reasonableness of a classification based on the subject matter of the rule. All who stand upon the same footing with respect to the subject matter are included and the rule is in harmony with the definition of reasonableness stated in such cases as *Darcy* v. *Mayor etc. of San Jose,* 104 Cal. 642 [38 Pac. 500], and *Ex parte Sohnke,* 148 Cal. 262 [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A. (N. S.) 813, 38 Pac. 500], relied upon by the petitioner.

■ The petitioner contends, citing *In re Collins,* 147 Cal. 8 [81 Pac. 220], that this court has no power to suspend any attorney except for causes specified by legislative enactment and therefore that the only charge made on which the petitioner could be tried is that based on subsection 4 of section 287 of the Code of Civil Procedure. This is equivalent practically to a contention that the State Bar Act (Stats. 1927, p. 38) is a nullity. That this is not so has been decided in the cases of *State Bar of California* v. *Superior Court,* 207 Cal. 323 [278 Pac. 432], *In re Cate,* 207 Cal. 443 [279 Pac. 131], and other cases. No other comment need be made in this connection.

■ The petitioner urges that his good faith and innocence of any intentional wrongdoing recommend him to the leniency of this court. Resolving every doubt and inference in his favor, we regret to note in the record an absence of the good faith which the petitioner claims to have possessed. Upon the hearing before the board of governors the petitioner affected, immediately upon the receipt by him of the

notice to show cause, to have severed connection with the West Coast Claims Bureau, except to preserve the interests of clients in pending matters, and to have ceased the filing of further lawsuits on claims obtained by it. Further examination of the petitioner by the board, however, disclosed that the petitioner had merely severed his connection with the San Francisco branch of the West Coast Claims Bureau and had removed to Los Angeles, where he continued the same employment with that concern at its headquarters in that city.

■ For the first time in these proceedings the petitioner also makes the contention that neither The State Bar nor this court has jurisdiction over the subject matter herein for the reason that neither the notice to show cause nor the amendment thereto was verified, nor was any verified complaint against him filed, as provided in section 291 of the Code of Civil Procedure. Assuming that this alleged defect in the proceedings could have been urged at the appropriate time, to wit, at the time of his response to the notice to show cause, we are of the opinion that the objection now comes too late and that if he had any right in this respect to safeguard, such right has been waived.

Further points made do not require discussion.

We are persuaded to follow the recommendation made by the board of governors. It is therefore ordered that the petitioner be suspended from practice as an attorney and counselor at law of this state for a period of two years from and after the filing of this order.