[S. F. No. 14081. In Bank.—October 30, 1931.]

C. H. FISH, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

C. H. Fish, *in pro. per.,* for Petitioner.

Robert L. McWilliams, Paul T. Wolf and Philbrick McCoy for Respondent.

THE COURT.—Petitioner instituted this proceeding for the purpose of reviewing an order of the Board of Governors of The State Bar recommending that petitioner be suspended from the practice of law in this state for the period of one year. The petitioner was charged by The State Bar with various violations of the Rules of Professional Conduct and of certain provisions of section 287 of the Code of Civil Procedure. The local administrative committee, before whom an extended hearing was had, found that all charges except

those involving violations of rules 2 and 3 of the Rules of Professional Conduct, as approved by this court, were not sustained by the evidence, and recommended their dismissal. That committee also found that petitioner had violated, on several occasions, the above-numbered rules, and recommended his suspension for one year. The Board of Governors adopted the findings and recommendation of the committee. In fairness to petitioner, it should be said that the charges, other than those involving violations of rules 2 and 3, were not supported by any material evidence.

Rules 2 and 3 of the Rules of Professional Conduct, which petitioner was found to have violated, read, at the time the offenses charged are alleged to have been committed, as follows:

"Rule 2. A member of The State Bar shall not solicit professional employment by advertisement, or otherwise. This rule shall not apply to the publication or use of ordinary professional cards, or to conventional listings in legal directories."

"Rule 3. A member of The State Bar shall not employ another to solicit or obtain, or remunerate another for soliciting or obtaining, professional employment for him; nor shall he directly or indirectly share with an unlicensed person compensation arising out of or incidental to professional employment, nor shall he directly or indirectly aid or abet an unlicensed person to practice law or to receive compensation therefrom; nor shall he knowingly accept professional employment on behalf of a claimant in a personal injury or death case offered to him as a result of or as an incident to the activities of an unlicensed person that for compensation controls, directs or influences such employment."

We have read the record, and are of the opinion that the evidence produced clearly shows a violation by petitioner of the above-mentioned rules, in that petitioner by himself and through the agency of Harry B. Rose and John Doe Brown (first name unknown) did solicit professional employment in various cases, or did accept employment when he knew that the same had been solicited for him. Petitioner does not seriously contend that the evidence is insufficient in this regard, but does urge various other objections to the order of suspension, all of which will be considered later in this opinion.

The evidence produced at the hearing before the administrative committee of The State Bar, clearly shows without material contradiction, the following facts:

That on February 25, 1929, a person by the name of Gus Pascal received serious burns in the course of his employment on a steamer in San Francisco Bay. After receiving first-aid treatment at the emergency hospital, Pascal was removed to St. Mary's Hospital, arriving there at about 10 A. M. Early that afternoon, a Mr. Brown arrived at the hospital, called on Pascal, and passed him a card, stating that he, Brown, represented and worked for Mr. Fish, petitioner herein. Pascal told Brown to go away, as he was too sick to talk with him. The next day Brown returned to the hospital, and again solicited the case for petitioner, and was quite urgent in his advice to start suit immediately against the employer, but again Pascal told him he was too sick to talk with him. The next day Brown again returned and this time induced Pascal and his wife to sign a paper. This document is entitled "Power of Attorney and Agreement" (accused's exhibit 2), and amounts to a contract of employment whereby Pascal employed Fish to represent him on a fifty per cent contingent basis, Fish to advance all costs. The name of petitioner is typed on the instrument in four different places. It is rather significant that the typewriter used in preparing this contract was equipped with script type and that the legal documents later prepared by Fish are prepared with the same sort of type.

Several days later Brown returned to the hospital in company with petitioner, and then, for the first time, Pascal met his attorney or proctor, the case being one in admiralty. At that time, Fish presented to Pascal, and secured his signature to, a libel in admiralty and an affidavit *in forma pauperis*. These documents were explained to Pascal by his wife at that time. Fish then started action against the employer. Later Pascal settled the case. Fish urged his client to continue the action, but when Pascal insisted on settling, petitioner agreed to the settlement, and was induced to accept fifteen per cent of the recovery, from which he paid the costs, in place of the fifty per cent provided for in the contract. From the above brief *résumé* of the facts and from the fact that Fish refused to answer any pertinent questions as to his relationship with Brown, the inference

is clear that the contract of employment was prepared in petitioner's office with his knowledge and consent; that petitioner knew of Brown's activities in connection with the matter; that Brown was the agent or employee of petitioner; and that petitioner accepted the employment with knowledge that the same had been solicited. In fairness to petitioner is should be stated that the client has made no complaint to The State Bar concerning petitioner and expressed himself as well satisfied with the legal services rendered.

The next charge against petitioner had to do with the Lyons-Kale cases. On March 21, 1929, Evelyn and Lillian Lyons, sisters, and Mrs. Kale, were injured while riding in the automobile of one H. Reynolds. A few hours after the injured women were taken home, a Mr. Brown called at the apartment and talked with Reynolds and handed him a card of petitioner. Later that evening, Reynolds called Fish by telephone and arranged with him to have the women sent to the hospital for treatment, Fish to advance all moneys necessary, the evidence showing that the women were destitute and badly in need of hospital treatment. Petitioner, evidently in response to this telephone call, came to the apartment and agreed to take the case. Brown was at the apartment during Fish's visit. Petitioner refused at the hearing to answer any questions as to his relationship with Brown, and refused to tell the committee whether this Mr. Brown was the same Mr. Brown that appeared as the soliciting agent in the Pascal case. The evidence shows that, after being retained by these women, petitioner represented them ably and well, advanced money to them, and secured satisfactory settlements for them. None of the clients ever complained to The State Bar or to any other agency, and expressed themselves as well pleased with the services rendered by petitioner, one of them testifying that she believed that she owed her life to him. The administrative committee found that Brown was a stranger to Reynolds; that Brown solicited the case for petitioner; that petitioner knew of Brown's activities in this regard. Neither Reynolds nor Brown was produced as witness by either side. After reading the record, we do not feel that the evidence produced by The State Bar, or the inferences that arise by virtue of petitioner's refusal to answer certain questions are sufficient to sustain the findings in this case. The evidence produced is equally

capable of the interpretation that Brown knew Reynolds; that Brown recommended Fish; that Reynolds, on behalf of the women who had been injured in his car, requested Fish to take the case. We are inclined to favor this interpretation of the evidence, and, therefore, find that the charges contained in counts 4, 5, 6, and 7 of the order to show cause are not sustained by the evidence.

The next charge involved the solicitation of a personal injury case by Harry B. Rose of Agnes Holt Fuson. On September 14, 1929, Mrs. Fuson was injured by an automobile, while crossing the street. After receiving first aid at the emergency hospital, she was taken to her home. Almost immediately Mr. Rose appeared at the house and informed Mr. Fuson that he represented various attorneys. Rose quite forcefully solicited the case from both Mr. and Mrs. Fuson. After some "high pressure" salesmanship, Rose secured the necessary signatures to a contract employing Fish as attorney on a thirty-three and one-third per cent contingent basis. This contract contains the name of petitioner in four different places. A day or so later Rose returned to the Fuson home and brought petitioner with him, and considerable discussion was had concerning the accident, and concerning the financial condition of the Fusons. Rose informed the Fusons that a loan could be arranged. Several days later, Fish sent the Fusons his personal check in the sum of $100 to aid them in their financial distress. Fish, on behalf of his client, and with her consent, subsequently started suit. The evidence likewise disclosed the fact that Rose worked from petitioner's office and had the same telephone number.

The above evidence, when considered with the fact that petitioner refused to answer any questions as to his relationship with Rose, clearly indicates that not only did petitioner know that the contract had been solicited by Rose for him, but likewise raises the inference that Rose was the agent of petitioner in such solicitation.

In reference to this Fuson case, this court cannot refrain from commenting on the activities of an adjuster for the Pacific Indemnity Company and the lack of good faith shown by the Fusons toward their attorney. After suit had been commenced, the Fusons, acting independently of their attorney, negotiated a settlement with one J. J. O'Connor,

adjuster for the company named above. O'Connor admitted, when called as a witness, that he knew that petitioner was attorney for the Fusons and that petitioner had advanced money to the Fusons for their living expenses. O'Connor, obviously a "high pressure" adjuster, finally settled with the Fusons for $300 and secured a release from them. He testified that he did not care about Mrs. Fuson's relationship with petitioner or whether or not she paid petitioner for costs or money advanced; that the deal was one of "cold dollars" as far as he was concerned. The attitude of the Fusons is indicated by the fact that they told O'Connor that they did not intend to pay Fish even for the money loaned to them. When petitioner learned of this settlement, he secured the consent of the Fusons to permit him to try to break the release. The attorney for the insurance company, through the efforts of Fish, finally settled for an additional $350, from which sum Fish properly deducted the money advanced and his fee, remitting the balance. The Fusons charged him with misappropriation of part of this money, but the committee found, and the evidence clearly shows, that petitioner's accounts with this client were true and correct in all particulars.

In the Norred case, the undisputed evidence shows that Fish approached Norred while the latter was in the hospital suffering from personal injuries, and told him that he, Fish, was an attorney. Fish at that time gave Norred his telephone number and told him to telephone in the event that he decided to sue. At that time, he showed Norred a check for $5,000, stating that it represented a settlement negotiated for a client a few days before. Fish never secured employment in the matter, although the evidence shows that he personally did solicit the case.

From the above summary, we are of the opinion that the evidence clearly shows that petitioner personally solicited the Norred case; that in the other cases above mentioned, Brown and Rose solicited employment for petitioner; that petitioner knew when he accepted employment in said cases that the same had been solicited for him by these men; that the inference is clear that these men were in the employ of petitioner or were his agents for this purpose. It is obvious that the above acts constitute clear violations of rules 2 and 3, above set forth.

Petitioner, as already indicated, does not seriously contend that the evidence above set forth does not sustain the above findings, but attacks the validity of the findings and the order of suspension on other grounds.

 In the first place, he contends that the administrative committee had no power to call him as a witness, and that no inferences can be indulged in because of his failure and refusal to answer questions as to his relationship with Brown and Rose. In this, we think he is in error. Before the passage of the State Bar Act (Stats. 1927, p. 38, as amended), it was specifically held that in disbarment proceedings the accused may be called as a witness, and that, if he fails to testify in his own behalf, the inference of guilt may be indulged in. Thus in *In re Vaughan,* 189 Cal. 491, at page 495 [24 A. L. R. 858, 209 Pac. 353, 354], this court specifically stated:

"It is insisted by appellant that the court erred in allowing him to be called to the stand and compelled to testify over his objection. He contends the disbarment proceedings are in the nature of a criminal action and that the accused in such a case should be accorded the same right to refuse to testify as is a defendant charged with the commission of a crime. This position cannot be maintained. Although it has been held that an accusation is in the nature of a criminal charge (*Matter of Haymond,* 121 Cal. 385 [53 Pac. 899]), and that a proceeding on such a charge is a *quasi-*criminal action (*In re McCowan,* 177 Cal. 93 [170 Pac. 1100]), 'this court has uniformly treated disbarment proceedings as a peculiar to themselves, and governed exclusively by the Code sections specifically covering them'. (*Matter of Danford,* 157 Cal. 425 [108 Pac. 322].) The purpose of such a proceeding is to determine the fitness of an officer of the court to continue in that capacity, and it has been said the disbarment of attorneys is not intended for the punishment of the individual but for the protection of the courts and the legal profession. (*Ex parte Finley,* 97 S. C. 37 [81 S. E. 279].)"

And again, at page 496, stated, quoting from another case:

" 'This is a special proceeding of a civil nature, and the rules applicable to criminal cases do not apply. (*In re Wellcome,* 23 Mont. 259 [58 Pac. 711]; *In re Randel,* 158 N. Y.

216 [52 N. E. 1106].) If the accused is not guilty, nothing would have been easier than for him to deny all knowledge of the charges laid at his door. His having failed to testify in his own defense, when he should do so, and deny the statements of Whiteside and Clark, not only justifies, but irresistibly implies, this court, upon the evidence before it, which is credible, to the conclusion that he is guilty.' In our opinion, in view of these considerations, this is not such a criminal prosecution against appellant as would entitle him to decline to testify on the ground that he cannot be compelled 'to be a witness against himself' (art. I, sec. 13, Const.), but he may be called and examined for the information of the court, without, of course, infringing his right to decline to answer questions propounded to him on the ground that his testimony would tend to incriminate him."

The position here indicated has been recently held by this court to apply to proceedings before the committees of The State Bar. (*McIntosh* v. *State Bar*, 211 Cal. 216 [294 Pac. 1067].)

 Petitioner strenuously contended before the Board of Governors and before this court that, inasmuch as the offenses of which he has been found guilty are not enumerated in section 287 of the Code of Civil Procedure, he cannot be suspended or disbarred, for the reason that that punishment can be meted out only for those offenses enumerated in that code section. He contends that mere solicitation of business does not involve any act of moral turpitude, dishonesty, corruption, deceit or collusion, or any violation of his oath; that suspension or disbarment cannot be imposed upon any attorney, unless some act involving one of the above elements is present. In other words, petitioner contends that violation of the Rules of Professional Conduct, unless such violation involves one or more of the above elements, is no ground for disbarment or suspension in this state. This is equivalent, practically, to a contention that the State Bar Act is a nullity. We think that these contentions of petitioner are completely answered adversely to him by the recent cases of *Howe* v. *State Bar*, 212 Cal. 222 [298 Pac. 25], and *Barton* v. *State Bar*, 209 Cal. 677 [289 Pac. 818].

 Petitioner also objects to the entire proceeding on the ground that the proceeding was not instituted by the filing

of verified complaint. Since petitioner's first briefs were filed, this contention has been decided adversely to petitioner in the case of *In re Herron,* 212 Cal. 196 [298 Pac. 474]. Petitioner has since filed, with permission of court, a supplemental brief, in which he urges that the proceedings here were not in accord with the requirements indicated by the Herron case. Petitioner points out that this court, in that case, stated that the State Bar Act contemplates a preinvestigation of the charges by a proper committee and that this pre-investigation takes the place of the verified complaint. Petitioner relies on the following language appearing at page 200 of the opinion in the Herron case, *supra:* "Such an investigation doubtless does and it should allow an opportunity for the accused to be heard before a proceeding is begun."

There is no doubt that in the case at bar petitioner had no notice of the pre-investigation, nor was he given any opportunity to be heard by that investigating committee, petitioner not knowing of the proceeding until served with the order to show cause. Although we feel that it is much better practice for the investigating committee, if it intends to proceed without a verified complaint, to inform the accused of the charges before the order to show cause is issued, we do not think such a requirement is jurisdictional. Particularly is that so in this case, for the reason that petitioner was not injured in any degree by this failure to inform him of the charges before the order to show cause was drawn. This contention we find to be without merit.

The last contentions of petitioner have to do with the alleged disqualification of the committee and the Board of of Governors to hear his case. Concerning these contentions, little need be said. Petitioner challenged the qualifications of the entire committee and also one member thereof on various grounds, none of which is contained in subdivisions 1, 2 or 3 of section 170 of the Code of Civil Procedure. Rule 18 of the Rules of Procedure provides:

"Challenge and Disqualification. No member of the local committee, if challenged before the introduction of evidence upon the hearing, shall act as a member of the committee in any matter before such committee if he would be disqualified as a judge upon any of the grounds specified in subdivision 1, 2 or 3 of section 170 of the Code of Civil Procedure. The committee shall pass upon the challenge. No local com-

mittee shall, however, hear a complaint against one of its own members.''

Since none of the alleged grounds of disqualification fall within the first three subdivisions of section 170, it is obvious that none of the members of the committee was disqualified. (See *Aydelotte* v. *The State Bar,* 209 Cal. 737 [290 Pac. 41].)

Petitioner also challenges the qualifications of the Board of Governors to pass upon his case. The grounds alleged go entirely to the question as to whether the board was biased or prejudiced. We do not feel that the Board of Governors or any of its members can be disqualified because of any alleged bias or prejudice. It has repeatedly been indicated by this court that the Board of Governors, when sitting in discipline cases, is an administrative body acting as the administrative arm of this court. Its findings, although based on conflicting evidence, are not binding on this court. This court can, and in this particular case, has refused to sustain findings of the Board of Governors based on conflicting evidence. In other words, in such cases this court can and always does pass upon the weight of the evidence. The rule is well settled that there is no disqualification upon the ground of bias or prejudice in administrative proceedings, particularly when the administrative board is the only body that can practically pass upon the particular case. (*Federal Const. Co.* v. *Curd,* 179 Cal. 489 [2 A. L. R. 1202, 177 Pac. 469].) The very point here involved has been decided by the District Court of Appeal in reference to the board of medical examiners. (See *Dyment* v. *Board of Medical Examiners,* 93 Cal. App. 65 [268 Pac. 1073].) The point is without merit.

Because of the above set forth violations of rules 2 and 3, the administrative committee recommended that petitioner be suspended for one year. The Board of Governors adopted this recommendation. In addition to what has already been stated, it should be pointed out that petitioner is not a young attorney, having been admitted to practice in this state in 1903, and cannot logically claim not to have apprehended the restraint imposed upon attorneys by the above rules. Nor has petitioner shown any indication that the charges in this case have served to impress him with the fact that attorneys are duty bound to adhere strictly

to the rules of professional conduct as approved by this court and that a violation of such rules reflects upon him in any way. In fact, petitioner concludes one of his briefs with the statement that "Petitioner in this matter is proud of his conduct, as proven by every word of the record." There is nothing in the attitude or acts of petitioner which appeals to the sympathy of this court. However, we are of the opinion that suspension for one year is too harsh a punishment for the offenses charged, inasmuch as they do not show any violation of the relation of attorney and client. Moreover, it should be pointed out that all of the acts of petitioner were committed before this court had determined that the rules of professional conduct provided additional grounds for discipline of attorneys to those provided in section 287 of the Code of Civil Procedure.

We are of the opinion that suspension for the period of three months more adequately fits the offense.

It is, therefore, ordered that petitioner be suspended from practice as an attorney and counselor at law in this state for a period of three months from and after the filing of this order.

WASTE, C. J., Dissenting.—I dissent. As the majority opinion correctly sets forth, petitioner has practiced law in this state for more than twenty-five years. He is a man of more than average intelligence, and has been fully cognizant of the efforts made by the organized State Bar of California to rid itself of the very practice he has consistently and persistently followed during the greater part of his career as a legal practitioner. When called to account by The State Bar, he at all times assumed a defiant and what appears to me to be a very supercilious attitude toward the efforts of that organization to discipline him for his improper practice.

As the majority opinion well points out, petitioner does not appear to have shown any indication that the charges against him had any effect upon him other than to cause him to earnestly set about thwarting the efforts of The State Bar in his case. He claims to be "proud of his conduct". The majority opinion states that "there is nothing in the attitude or acts of petitioner which appeals to the sympathy of this court". With that statement I am in thorough accord, and it

is for that reason that I vigorously dissent from the reduction of the period of suspension recommended by The State Bar.

Rehearing denied.