[S. F. No. 14960. In Bank.—January 29, 1934.]

STANLEY F. NOLAN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Robert H. Morrow and Stanley F. Nolan, *in pro. per.*, for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—On August 8, 1932, Stanley F. Nolan, a member of The State Bar of California, was, after preliminary investigation, notified by local administrative committee No. 3, for the city and county of San Francisco, State Bar of California, to appear before that body on August 18, 1932, to then and there show cause why he should not be disciplined for professional misconduct and for violation of his oath and duty as an attorney and counselor-at-law in the following respects, to wit:

That at the city and county of San Francisco, state of California, within approximately one year prior to proceedings taken, he did receive and retain from Bertha Mae Hedges a credit for $98.91 on account of board and room and $35 on account of costs, under the pretext and representation that he would pay said $35 on account of costs for filing and conducting bankruptcy proceedings on behalf of said Bertha Mae Hedges, which she claims petitioner had

advised her to commence. Said notice further informed him that he was charged with having failed and refused to account for said moneys so received or to render any services or take any steps whatever in the fulfilment of his obligations and that he had received said credit and retained said moneys without the intention of rendering any part of the legal services which he had contracted to perform. Petitioner by way of answer denied that he was guilty of any of the acts set forth in said notice. Hearings were held on said notice to show cause on September 20 and October 6, 1932. The local administrative committee made findings of fact and prepared conclusions of law as to which all members agreed. As to the recommendation, one member of the committee recommended a suspension of petitioner from the practice of the law for a period of three months and the other two recommended a public reprimand. The committeeman who recommended a three months' suspension was of the view that the degree of moral turpitude which would justify disbarment was not shown at the hearing, but that it was clearly shown that petitioner lacked the consciousness of the duties and responsibilities of an attorney and exhibited an extreme disregard of the devotion and fidelity to his client which the relation of attorney and client should demand. The other two committeemen adopted the findings and conclusions of their associate but recommended a public reprimand, believing that the ends of justice would be subserved thereby. After a number of continuances the matter came before the Board of Governors of the State Bar for final action. Petitioner and his counsel appeared, and both addressed the board in petitioner's behalf. The findings of the local administrative committee were adopted and approved as the findings of the board. Eight members of the board voted to suspend the petitioner for a period of three months, and four, placing their dissent upon the ground that three months' suspension was an insufficient penalty for the offenses disclosed by the record, voted in the negative. Petitioner has brought the record to us on a petition for a writ of review.

The record discloses several transactions had with Mrs. Hedges and her husband as parties on the one hand and petitioner as a party on the other. From the confusing and somewhat incoherent defense of the petitioner, it

has been difficult for us, as it must have been for the local administrative committee, judged from the many questions it propounded to him, to reconcile his unusual course of transacting business with the well-recognized standards which should guide an attorney in dealing with his client. We have carefully read the transcript of the evidence taken at the hearing, and while we are not willing to state that it discloses a definite case of moral turpitude on the part of petitioner, we are convinced that it convicts him of employing unlawyer-like and dissembling methods which properly call for disciplinary action. It would not serve any useful or beneficial purpose for this court to engage in an extensive analysis of all the evidence. It will be sufficient to refer to so much of it as tends to justify the recommendation of the Board of Governors of the State Bar.

It appears that Mrs. Hedges was conducting a hotel under lease at 863 Bush Street in San Francisco during the summer and fall of 1931 and for a period thereafter. She was a stranger to petitioner until on or about April 21, 1931, when she and her husband became involved in an automobile accident. The testimony of Mrs. Hedges was to the effect that a man came to her after the accident and said to her he would be glad to act as a witness for her if she would employ an attorney friend of his. When she arrived home on the same day a call came from Mr. Nolan, who said to her that a friend of his had given her name to him as a person who had had an automobile accident and he requested her to call at his office with respect to the matter. She and her husband subsequently called and Mr. Nolan told her that she had a good case for damages and he would have the money compensating her for damages suffered by her on the next day, as he was acquainted with the adjuster of the insurance carrier. Mr. Nolan had a prepared contract for her to sign with him, which in effect authorized him to represent the Hedges as their attorney in collecting, by settlement or suit, whatever damages he might recover from one Scafidi, the party to be charged with negligence. Mr. Nolan was to retain one-third of said sum. This contract was signed by the Hedges. The action is referred to as *Re Hedges* v. *Scafidi*. Two days thereafter he informed Mrs. Hedges that he was short of money and requested enough money to file the papers, but said it would be re-

turned to the Hedges out of the moneys he would recover for them. It was her understanding that the costs would be paid by Nolan. Mrs. Hedges advanced $10 on account of costs and was given a receipt in words and figures as follows:

"April 23, 1931.

"Rec'd this day $10.00 on acct. *re Hedges* v. *Scafidi.*

(signed) "S. NOLAN."

Mrs. Hedges was in financial difficulties at the time of the transaction. She had been cited several times by the commissioner of labor for having failed to pay certain of her employees. She was also otherwise involved in the affairs of the hotel. Mr. and Mrs. Hedges' testimony, which in the main is corroborated by other witnesses, and in some respects by Nolan himself, is to the effect that Nolan, immediately after he solicited said automobile accident case, proposed that he board at Mrs. Hedges' hotel, Hotel Eugene by name, and he did become a boarder on or about June 14, 1931, and continued to board at said hotel to the time she sold it in July, 1931. The hotel changed hands, but it was again re-rented to Mrs. Hedges. Nolan owed her, when he left the hotel, $98.91. Mrs. Hedges had been pressing him for payment of the board bill but he had no money. He promised her that as soon as he was able he would pay the bill, and also said to her that he would be pleased to render her legal services in payment of the bill. He paid nothing, however, and as Mrs. Hedges was subsequently summoned to appear at the labor commissioner's office on account of complaints made by laborers against her because of nonpayment of labor claims, she went to his office and requested him to accompany her to the commissioner's office. He advised her to file a petition in bankruptcy as that would probably eliminate the laborers' claims. He told her the costs would amount to $35 or $40 and asked her for that amount, admitting his indebtedness to her, but saying that he would be glad to pay her but he did not have the money. Mrs. Hedges told him she had very little money but she gave him a check on May 4, 1932, for the sum of $10, upon the back of which she wrote "For filing papers in Bankruptcy." It was understood that this money was to be applied on account of costs. On May 6, 1932, she gave him another check for $20, and on May 13th she gave him a third check for $5.

No proceedings in bankruptcy were ever commenced. This subject will be presently adverted to. In the meantime we will consider his handling of the automobile accident case. Petitioner's method of practicing law as related by himself was to give over the trial of each case to a specialist in the particular branch of the law to which said case belonged. He did no trial work himself. If unable to effectuate a settlement his plan was to associate a trial lawyer. In the instant case, it appearing that the insurance company would pay nothing by way of settlement without a contest, he passed the case over to attorney C. D. Dethlefsen, a specialist in the trial of negligence cases and who, according to his testimony, has handled 3,000 of such cases. Nolan did not appear upon the record as an attorney, or in the case. Finally the insurance company paid $100 by way of settlement rather than go to trial. Mr. Dethlefsen had tried other cases for Mr. Nolan. The latter was indebted to him in some amount. Nolan and the insurance adjuster had agreed upon a settlement upon the payment of $100, but Mrs. Hedges refused it as not being sufficient. Dethlefsen later accepted the offer without the approval of Nolan. Dethlefsen had advanced all costs. The $10 which Nolan had received was not paid to Dethlefsen but retained by him. It seems, according to Dethlefsen, Nolan was agreeable to the settlement as Dethlefsen credited him on account of his portion of the $33.33 fee. Nolan claims that the $10 which he received was on account of his fee. The Hedges testified that it was advanced as costs to be accounted for if and when a judgment was obtained or settlement made. The fee was on a contingency basis and it is not at all likely that $10 was paid on account of a contingent fee. The receipt was prepared by Nolan. Throughout his testimony and his participation in the conduct of these proceedings we find him excoriating Mrs. Hedges, his former client, and denouncing her as an impostor, maintaining a cause wholly without merit. He early became satisfied in the damage suit, he says, that she was in fault as to the accident and, further, that she received no injuries therein. Nevertheless he continued to press her claim for damages. While his name was not upon the complaint, he asserted that he was in control of the case. His claim seems to be that he was entitled to the one-third part of the $100 which was retained by Deth-

lefsen and therefore he was entitled to retain the $35 paid to him by Mrs. Hedges as costs in the bankruptcy matter. According to both Dethlefsen and Nolan the latter was agreeable to Dethlefsen crediting him with whatever was due him on said previous indebtedness. In any event, Dethlefsen was the agent of Nolan and Mrs. Hedges was in no way a party to their private professional enterprises.

The bankruptcy project unquestionably discloses reprehensible conduct on the part of Nolan in his treatment of his client. He offers as a justification of his failure to commence the bankruptcy proceeding the refusal of Mrs. Hedges to verify the oath *in forma pauperis* and make affidavit to the several sets of schedules which were a necessary part of the petition. The bankruptcy proceeding was, according to Mrs. Hedges, born in the mind of attorney Nolan and was intended to be used by him as a sort of back-fire against the prosecution of the labor claims which had been filed against her. In other words, the papers in bankruptcy were to be flourished in the presence of the commissioner as a bar to further proceedings on the labor claims. Mrs. Hedges said she was acting in good faith and supposed the papers in bankruptcy had been filed when, as a matter of fact, they had not been sufficiently prepared to give them any value whatever. She said she signed her name wherever Nolan told her to sign it. Out of more than a dozen sets of schedules, each of which should have been signed, not one was signed. The pauper's oath was signed but not verified, and the only other papers signed were the two last pages of the petition. None is verified. It seems incredible that Mrs. Hedges, acting under the advice of her attorney, should have refused to obey his instructions in a matter in which she was unskilled. The logic and reasonableness of the proposition and the relationship of attorney and client add convincing force to the testimony of Mrs. Hedges as to whether petitioner demeaned himself as an attorney should in the performance of his duty to his client and to the law itself.

Petitioner would give us the impression that his former client was engaged in what he terms the apartment house racketeering. That term as we understand it is sometimes applied to an unconscionable person who is engaged in buying and selling apartment house leases and who is a swindler and a cheat. We do not so stigmatize his client. But if he

be right in his estimate of her, he knew or should have known very early in his business dealings with the Hedges all that he charges her to be at the time the charges against him came on for hearing, and her fraudulent purpose to recover on an unfounded claim, if such be true, should have caused him to take steps to thwart her in her iniquitous purpose, rather than assist her in wringing from the insurer of her adversary a claim which he says his clients were not entitled to receive. A similar breach of duty is seen in the insolvency transaction. It was a bald subterfuge, adopted to gain an advantage in one of the departments of government. In the light of what has been said it is not necessary to discuss further the failure of petitioner to pay the certain amounts paid to him by Mrs. Hedges on account of court costs. It was conclusively established by the indorsement made by Mrs. Hedges on the first check she drew and delivered to him in the insolvency matter, to wit: "For filing papers in bankruptcy", that the money was to be so applied. As to the other transactions there is sufficient evidence to sustain the finding of both the local administrative committee and the Board of Bar Governors in the finding that petitioner failed to comply with his trust by applying said moneys to his own uses.

If petitioner has, as he claims to have, any charges against Mrs. Hedges for services rendered, he has, and at all times has had, a remedy. That question is not before us. The real question is whether he used moneys furnished to him for the specific purpose for which they were furnished, and whether his conduct throughout the transaction was fairly open to the construction placed upon it by the two law bodies which passed upon it. Both bodies were unanimous in their conclusion. They differed only as to the degree of discipline that should be imposel. We find nothing in the record that would warrant us in disregarding the recommendation. It is therefore adopted.

Mr. Nolan calls our attention to a receipt and paper presented by him to the secretary of The State Bar some four days after the final hearing of this matter. The letter, apparently bearing Mrs. Hedges' signature, acknowledges the return of $45 covering the cost in the proposed bankruptcy proceeding and the $10 paid on account of the personal injury case. The claim of Mrs. Hedges on account of board

furnished Mr. Nolan in the sum of $98.91 had been by her assigned to the labor commissioner for the benefit of the laborers who had filed demands against her. In reverting to this matter, it is provided in said receipt that it "does not in any way operate as a release of any amounts assigned by Mrs. Bertha Hedges to the labor commissioner of the State of California". It closes with the following statement: "I have no objections to proceedings that are now before the Bar Association to be dismissed." This letter was placed in the files and was considered by the local administrative committee and the Board of Bar Governors.

The petitioner has insistently contended throughout that he has not committed any act or acts which should subject him to censure or justify a finding that he should be brought within the disciplinary jurisdiction of the law. While it may be said that we would be unwilling to stigmatize him with the commission of acts amounting to moral turpitude, we are forced to find that he has unquestionably far overstepped the rules which should be observed by all who are authorized to hold themselves out as counselors of those who come to them seeking legal advice.

It is ordered that petitioner be and he is hereby suspended from the practice of the law in all the courts of this state for a period of three months, said suspension to become effective thirty days from the service of notice of the within order made upon him by the clerk of this court in the usual form.

Rehearing denied.