[S. F. No. 15048. In Bank.—April 30, 1934.]

FRANK W. SAWYER, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Frank W. Sawyer, *in pro. per.*, for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—Application for writ to review the findings of the board of governors of the The State Bar and the recommendation based thereon that petitioner be suspended from the practice of the law for six months for a violation of rule 3 of the Rules of Professional Conduct of The State Bar of California. Rule 3 provides that a member of The State Bar "shall not employ another to solicit or obtain, or remunerate another for soliciting or obtaining, professional employment for him; nor shall he directly or indirectly share with an unlicensed person compensation arising out of or incidental to professional employment; nor shall he directly or indirectly aid or abet an unlicensed person to practice law or to receive compensation therefrom".

Formal proceedings were instituted against petitioner after a preliminary investigation by local administrative committee No. 3 of the city and county of San Francisco. The petitioner pursuant to rules 10 and 11 of the Rules of Procedure of The State Bar was ordered to show cause before local administrative committee No. 4 of the city and county of San Francisco why he should not be disciplined for professional misconduct in violation of said rule 3 and section 287 of the Code of Civil Procedure, because of the charges set out in six separate and distinct complaints, all of the same general import, to the effect that petitioner had at

different times and on different occasions solicited of different persons legal employment, either professionally or through an unlicensed layman employed by him, for a cause of action alleged not to be legal or just and so known to be by petitioner; that in such false solicitations false and slanderous statements were made as to different corporations; that money was collected by petitioner ostensibly for legal services in connection with said statements and part of it paid to said unlicensed laymen for services in aiding petitioner, thereby permitting a layman to receive compensation from the practice of the law; and that after the receipt of said moneys no legal services were actually rendered. There was also an allegation that petitioner had wilfully represented himself as an attorney for a stockholder when not so actually employed.

The petitioner filed an answer to the allegations of the order to show cause as provided for in rules 18, 23 and 24 of said Rules of Procedure, and denied categorically each and every of said specifications of misconduct set out in each of the six separate and distinct complaints.

In making these denials the background of the petitioner's position appears substantially in finding No. 4 of local administrative committee No. 4, reading as follows:

"(a) That respondent is now and continuously since the year 1889 has been licensed to practice and is practicing law in the state of California.

"(b) That respondent is sixty-eight years of age.

"(c) That continuously since the year 1904, respondent has been specializing in investigating corporations for the benefit of shareholders and has, during all the time last mentioned, maintained a system to obtain information concerning the management of corporations, and on numerous and various occasions was employed by other members of the bar to represent their clients in investigating and/or prosecuting their claims as shareholders against corporations.

"(d) That since the year 1904, respondent's experience in his said specialty was that nearly always, dissatisfied shareholders would call at his office and engage him to investigate the management of corporations in which they held shares. On very limited other occasions he was employed by organizations specializing in investigating corporations.

"(e) That National Bureau of Corporation Research was organized for the purpose of investigating corporations. That the respondent accepted employment as counsel for said National Bureau of Corporation Research in connection with the investigation of certain corporations and the arrangement was that the Bureau would engage men to contact the shareholders and such of the shareholders as were willing would advance a sum of money equal to 10% of their investment in the shares and this money was paid to respondent who divided it as follows:

"30% to National Bureau of Corporation Research,
"40% to the solicitors employed by the Bureau,
"30% for respondent."

The petitioner did not object to these findings but takes the position that he accepted only professional employment; that he himself employed no one to solicit or obtain such employment but that such persons were employed by the National Bureau of Corporation Research to contact shareholders of various corporations dissatisfied with the conduct thereof and that he acted as counsel under employment by said bureau; that he himself had nothing to do with the organization of the Bureau of National Research beyond preparing its articles of incorporation at the instance of M. J. Anderson, which articles were filed in the proper offices, but no further steps taken toward corporate organization. It appeared that said bureau occupied adjoining offices to petitioner and a common reception room was used.

At the conclusion of the hearings held during the year 1932, wherein oral evidence was taken and many exhibits introduced, local administrative committee No. 4 found that as to the "second" and "fourth" separate and distinct complaints the facts therein set forth were not true; and that as to the "first", "third", and "sixth" separate and distinct complaints, the committee found that "in every case where respondent acted for shareholders directly or through employment by National Bureau of Corporation Research, he acted in absolute good faith and with the honest belief that the shareholders had a just complaint against their corporations, and that in the case of two of the corporations at least, respondent instituted legal proceedings and did a great deal of work in behalf of shareholders".

In its finding (6) the committee found: "That during the hearing of this matter, respondent stated to the committee that he had been engaged in the specialty aforesaid for the many years aforesaid and had never been criticized in connection therewith nor has it ever been suggested to him that his practice was not ethical and that if, in the opinion of the Board of Governors, respondent's work of investigating corporations under the circumstances heretofore set forth is objectionable in the least, he will abandon the practice upon the suggestion of the Board of Governors."

Finding (9) as to the first cause of complaint was as follows: "The respondent did collect money, viz., $25. from Emma A. Hively for legal services and expenses in connection with an investigation of and legal proceedings instituted against Coast Tire & Rubber Company, a corporation, and in the judgment of this committee, there was probable cause for such investigation. That a part of the money so collected from said Emma A. Hively was paid to the management and solicitors of National Bureau of Corporation Research. That no part of the money so collected was returned to said Emma A. Hively."

Finding (10) was as follows: "That Emma A. Hively was solicited to join the shareholders of Coast Tire & Rubber Company by a lay person and later respondent represented her as her counsel in that matter."

As to the third cause of complaint finding (11) was as follows: "That respondent did receive money, viz., $375, from Daniel Lyons for legal services and expenses in connection with an investigation of and legal proceedings instituted against Doble Steam Motors Corporation, a corporation, and in the judgment of this committee, there was probable cause for such investigation. That a part of the money so received from said Daniel Lyons was paid to the management and solicitors of National Bureau of Corporation Research. That no part of the money so received was returned to said Daniel Lyons."

Finding (12): "That said Daniel Lyons was solicited to join the shareholders of Doble Steam Motors Corporation by a lay person and that said lay person was connected with the said National Bureau of Corporation Research, and by employment, respondent represented such shareholders of Doble

Steam Motors Corporation as were solicited by National Bureau of Corporation Research.''

Finding (13): ''That with respect to the 'fifth separate and distinct complaint', and the 'sixth separate and distinct complaint', set forth in the Notice to Show Cause, the committee finds that Lizzie Radford, whose correct name is Elizabeth Radford, and John Doe Radford, whose correct name is J. W. Radford, were and are husband and wife and that they were jointly interested in shares of the capital stock of Doble Steam Motors Corporation and that the certificate representing such shares stood in the name of the husband.''

Finding (14): ''That respondent did receive money, viz., $137.50 from said Elizabeth Radford and J. W. Radford for legal services and expenses in connection with an investigation of and legal proceedings instituted against Doble Steam Motors Corporation, a corporation, and that in the judgment of this committee, there was probable cause for such investigation. That a part of the money so received from said Elizabeth Radford and J. W. Radford was paid to the management and solicitors of National Bureau of Corporation Research. That no part of the money so received was returned to said Elizabeth Radford and/or J. W. Radford. That otherwise the allegations of the sixth count are true.''

Finding (15): ''That said Elizabeth Radford and J. W. Radford were solicited to join the shareholders of Doble Steam Motors Corporation by a lay person and that said lay person was connected with the National Bureau of Corporation Research, and by employment, respondent represented such shareholders of Doble Steam Motors Corporation as were solicited by National Bureau of Corporation Research.''

From the foregoing findings the committee concluded: ''That the respondent, Frank W. Sawyer, committed no act in violation of the terms, force, effect, meaning and spirit of the Rules of Professional Conduct adopted by The State Bar of California or Rule 3 thereof, or the terms, force, effect, meaning and spirit of section 287 of the Code of Civil Procedure of the State of California'', and recommended as follows:

'' (1) That if it is objectionable for a member of the Bar to organize shareholders of corporations for the purpose of

representing their interest against the corporation, that respondent be privately reprimanded and instructed to cease the practice.

"(2) That if it is objectionable for a member of the Bar to accept employment from any lay organization or person engaged in the business of organizing shareholders to represent such shareholders in proceedings against the corporations, that respondent be privately reprimanded and instructed to cease accepting employment from any such lay organization or persons.

"(3) That if it is objectionable for a member of The State Bar to organize such shareholders or to represent such lay organizations or persons, that the members of The State Bar be so notified through the State Bar Journal or some other medium, as there are other members of the Bar engaged in that practice."

The proceedings, conclusion and recommendation of local administrative committee No. 4 of the city and county of San Francisco were duly reported to the board of governors of The State Bar. In its review of the said proceedings the board of governors decided to take additional evidence at which petitioner with his counsel were personally present. At the conclusion of its review, aided by the additional evidence before it, the board of governors made its own findings expressly disproving the findings, conclusion and recommendation of local administrative committee No. 4, except as to such matters found to be true in its own findings. As to the "second" and "fourth" separate and distinct counts, no evidence having been introduced in regard thereto, the board of governors found the said charges to be untrue. As to the "first", "third", "fifth" and "sixth" separate and distinct complaints the board found in accord with the local committee's findings (a), (b), (c), (d) and (e) hereinbefore set out, and additionally as italicized: "(6) That respondent did collect money, viz., $25. from Emma A. Hively for legal services and expenses in connection with an investigation of and legal proceedings instituted against Coast Tire & Rubber Company, a corporation. That a part of the money so collected from said Emma A. Hively was paid to the management and solicitors of National Bureau of Corporation Research. That no part of the money so collected was returned to said Emma A. Hively. *That respondent accepted said*

*employment in said case, knowing that said employment had been solicited by an employee of said Research Corporation, and split the money so received in said employment with unlicensed persons."* That "there was probable cause for such investigation" was deleted from the local committee's finding.

Finding (7) of the board of governors is the same as finding (11) of the local committee with the phrase "there was probable cause for such investigation" deleted.

Finding (8) is the same as finding (12) of the local committee with the italicized additions thereto: "(8) That said Daniel Lyons was solicited to *pay said money and* to join in an investigation of Doble Steam Motors Corporation *by respondent,* by a lay person and that said lay person was connected with the said National Bureau of Corporation Research; *that* by *said* employment, respondent represented such shareholders of Doble Steam Motors Corporation as were solicited by National Bureau of Corporation Research. *That respondent knew when he accepted such employment that it had been solicited."*

Finding (9) as to the fifth and sixth separate and distinct complaints is the same as the local committee's finding (13) with respect to the joint interest of Elizabeth Radford and J. W. Radford in shares of the capital stock of Doble Steam Motors Corporation, and that the certificate stood in the name of J. W. Radford.

Finding (10) as to the receipt of $137 from the Radfords for legal services and expenses in connection with an investigation of any legal proceedings instituted against Doble Steam Motors Corporation is the same as the local committee's finding (14) with the phrase "and that in the judgment of this committee, there was probable cause for such investigation" deleted.

Finding (11) rewrites finding (15) of the local committee to read as follows: "That said Elizabeth Radford and J. W. Radford were solicited *to pay said money and to join in said investigation of Doble Steam Motors Corporation and to employ respondent by a lay person and that said lay person was connected with the said National Bureau of Corporation Research, and by employment, respondent represented said Elizabeth Radford and J. W. Radford, and other share-*

*holders of Doble Steam Motors Corporation as were solicited by National Bureau of Corporation Research. That in accepting such employment, said respondent knew that such employment had been solicited by employees of agents of said research corporation.*"

Finding (12) is as follows: "That respondent directed the solicitation of the stockholders in the various corporations and knew at all times that in each case herein mentioned that such employment was solicited."

Finding (13) is as follows: "That the organization of said research corporation was not in good faith, but was deliberately planned by respondent and said M. J. Anderson for the purpose of securing professional employment for said respondent, that in accepting said employment so solicited the respondent did not act in good faith."

From the foregoing findings or statement of facts the board of governors reached the conclusion that the petitioner had violated rule 3 of the Rules of Professional Conduct adopted by The State Bar of California, and recommended that he be suspended from the practice of the law in the state of California for a period of six months.

It is apparent from the modification of the findings of the trial committee that the matter in the minds of the board of governors had finally resolved itself down to the question of whether or not a person or persons who are not stockholders of a corporation have the right to organize stockholders into a group in conjunction with an attorney who is actively · participating in the solicitation of stockholders to come in and join the litigation, coupled with a further question as to whether it is legitimate practice, assuming that solicitation is proper at all, to take from such aggrieved stockholders a comparatively large sum of money, seventy per cent of which does not go toward litigation in protection of their rights at all, thus differentiating the question involved in this investigation from the question of the admitted right of stockholders to organize and proceed in a representative capacity, to communicate with other stockholders, and to solicit funds from them for the purpose of protecting their mutual interests in the corporation, the deciding factor in the contemplation of the board of governors being that respondent *knew* that his employment had been solicited and its terms arranged for upon a percentage

basis contrary to the spirit of and inhibition of rule 3 of the Rules of Professional Conduct.

The petitioner contends there is no evidence to support finding (12) of the board of governors: "(12) That respondent directed the solicitation of the stockholders, in the various corporations, and knew at all times that in each case herein mentioned that such employment was solicited." The petitioner, however, admitted the collection of money and that it was paid to him and came from the members of the various groups of stockholders that were organized; that solicitors were sent out to various stockholders; that one of the purposes of soliciting these stockholders was to bring business to his office for the purpose of instituting legal proceedings, if necessary. The petitioner admitted that his name appeared on the letter-heads of said bureau as counsel; that the existence of a valid research corporation was represented to these people; and that of the collections paid to him as the result of such solicitation petitioner received thirty per cent and forty per cent went to Anderson and thirty per cent to solicitors as by Anderson directed. Anderson testified that he was employed by petitioner to take charge of the organization work and that petitioner paid the bills. These admissions and testimony amply sustain the finding that petitioner knew that such employment was solicited on a percentage basis, either directly or indirectly.

Petitioner also attacks finding (13) of the board of governors to the effect: "That the organization of the research corporation was not in good faith, but was deliberately planned by respondent and said M. J. Anderson for the purpose of securing professional employment for said respondent; that in accepting said employment so solicited, the respondent did not act in good faith." Lack of good faith may seldom be proved directly, but may be inferred from circumstances appearing in evidence. Here we have the circumstances of adjoining offices and a common reception room as between Anderson, the organizer of the National Bureau of Corporation Research, and the petitioner's law offices, the name of said research corporation appearing on the common reception room door; the admission that Anderson and the solicitors employed by him were in constant consultation with petitioner; that petitioner furnished Anderson with the names of stockholders to be interviewed

and solicited; Anderson's statement that he was compensated by petitioner, depending upon the amount of work and the length of time it took; the circumstance that all moneys collected by solicitors were paid first to petitioner and then disbursed to Anderson and to the solicitors as Anderson directed; the admission that Anderson was considerably indebted to petitioner and that practically every solicitor employed by Anderson owed petitioner money for advances made to them, hardly seems consistent with petitioner's claim that said research corporation was entirely a creation of Anderson's, with which he had no concern except to act as an attorney under its employment, petitioner receiving thirty per cent of moneys collected, and said research corporation and its employees receiving the balance of seventy per cent, and it would be difficult to hold under the evidence before the board of governors that entire good faith characterized petitioner's connection with said National Bureau of Corporation Research, and that the relation existing between petitioner and said Anderson, its purported organizer and manager, was purely that of client and attorney.

The solicitation of business by members of the legal profession has always, at least historically, been deemed unethical, and is expressly prohibited by rule 2 of the Rules of Professional Conduct of The State Bar of this state. The petitioner admits that there was solicitation and that he had knowledge of it, but asserts ''that the solicitation was for the purpose of organizing stockholders likewise interested into a group for mutual protection and benefit.''

We feel that in the light of the decided attitude taken by The State Bar and approved by this court as expressed in the recent cases of *Townsend* v. *State Bar,* 210 Cal. 362 [291 Pac. 837]; *Shaw* v. *State Bar,* 212 Cal. 52 [297 Pac. 532]; *Smallberg* v. *State Bar,* 212 Cal. 113 [297 Pac. 916]; *Howe* v. *State Bar,* 212 Cal. 222 [298 Pac. 25]; *Dahl* v. *State Bar,* 213 Cal. 160 [1 Pac. (2d) 977]; *Recht* v. *State Bar,* 218 Cal. 352 [23 Pac. (2d) 273], the disciplinary recommendation of the board of governors is justified and should be upheld by this court.

In fairness to petitioner it should be stated that while the board of governors went to some extent into the reasons for the apparent delays in bringing actions and in not having reached a definite conclusion in any of the matters here

under investigation, the petitioner points out, plausibly at least, that he believed he had good causes of action in protection of the rights of minority stockholders but that no adequate results could be obtained in a representative stockholders' suit and that the only effective means of securing a recovery against wrongdoing directors was by a jury trial; that he believed that minority stockholders had a constitutional right to a trial by jury; that he had attempted to test this right in one case and had unsuccessfully sought a writ of mandate from this court to compel the superior court to grant a trial by jury; that he had thereupon gone to trial, demanded a jury, been refused a jury trial, and had then offered no evidence, and the defendants doing likewise judgment necessarily went for the defendants; that an appeal had been taken from the order denying the demand for a jury trial and that such appeal is now pending in this court and undecided, and is intended to be a test of the question of whether or not a minority stockholders' suit may be prosecuted by an action at law.

The conclusion of the board of governors that the petitioner has violated rule 3 of the Rules of Professional Conduct of The State Bar is approved. The recommendation that the petitioner be suspended from the practice of the law in the state of California for a period of six months is modified to provide for suspension for a period of three months, which order of suspension is to date from and after thirty days of the entry of this order, and it is so ordered.

LANGDON, J., Dissenting.—I dissent as to the punishment. The local administrative committee was uncertain as to whether the acts complained of were improper, as shown by their recommendations, and they found that petitioner did not act in bad faith. They recommended that if his actions were objectionable he be privately reprimanded. We hold that they are objectionable, and I am disposed to follow their recommendation. I believe that a mere suggestion to petitioner that he desist from the practices herein found objectionable would be followed promptly. A reprimand is, in my judgment, the extreme penalty justified by the facts.