[S. F. No. 16386. In Bank.—November 12, 1940.]

JOSEPH M. TRUSTY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

J. B. Zimbars and H. J. Kleefisch for Petitioner.

Claude Minard for Respondent.

THE COURT.—Petitioner seeks herein to review the action of the board of governors of the State Bar in a disciplinary proceeding instituted against him before local administrative committee No. 5 for the city and county of San Francisco. In the order to show cause issued and served upon him petitioner was charged with the violation of his oath and duties as an attorney at law within the meaning of section 6103 of the State Bar Act (Chap. 4, Business and Professions Code), as the same are prescribed by sections 6067 and 6068

of that act, and the commission of acts involving moral turpitude and dishonesty within the meaning of section 6106 of the same act.

Petitioner was employed in 1933 to institute and prosecute a divorce action on behalf of a woman client. He was paid a fee therefor. The action was commenced and after hearing, a minute order was entered granting petitioner's client an interlocutory decree of divorce. However, petitioner failed to prepare an interlocutory decree and to submit the same to the trial judge for his signature. In fact, nothing further was done by petitioner until the latter part of 1939, following the institution of this disciplinary proceeding, when he had both the interlocutory and final decrees entered pursuant to section 131.5 of the Civil Code which then had been recently enacted by the legislature.

It is apparent from the transcript of evidence taken before the local committee that the client on numerous occasions had requested petitioner to secure a final decree for her, but that he had failed and neglected to do so, and that she finally ascertained that for some unknown reason petitioner had failed and neglected to have the interlocutory decree of divorce entered. In explanation of his conduct, petitioner testified in substance that he had learned that the parties were living under the same roof and assumed that they had become reconciled. Such assumption immediately upon entry of the minute order granting an interlocutory decree finds little basis in reason. Thereafter, even the most cursory inquiry by petitioner would have confirmed his client's unaltered desire in the premises and would have served to disabuse his mind of such unfounded assumption.

After finding the facts, the local committee properly found that petitioner was not justified in assuming a reconciliation and that he was neglectful in not having the interlocutory decree promptly entered. Because no great damage ultimately was visited upon the client, the local committee recommended a private reproval. The board of governors adopted the findings of the committee and based also upon a prior private reproval of petitioner in 1930 has recommended that he be suspended from the practice of the law for thirty days.

We find no merit in petitioner's contention that upon adoption of the local committee's findings the board of governors is without power to recommend a more severe discipline than that recommended by the local body. The pro-

cedure contemplated by the State Bar Act clearly provides for an examination and review by the board of governors of all disciplinary proceedings heard before local committees and confers power upon the board to make recommendations to this court as to the discipline to be imposed upon members of the bar against whom such proceedings are instituted. We need only refer to sections 6043 and 6078 of the State Bar Act which definitely indicate that while a local committee may make findings and recommendations in disciplinary proceedings, the board of governors is not bound thereby and may entirely disregard the same and make such findings and recommendations as the record before it might justify. This court repeatedly has approved such procedure. (*Recht* v. *State Bar,* 218 Cal. 352 [23 Pac. (2d) 273]; *Nolan* v. *State Bar,* 219 Cal. 759 [28 Pac. (2d) 1050]; *Sawyer* v. *State Bar,* 220 Cal. 702 [32 Pac. (2d) 369]; *Oster* v. *State Bar,* 2 Cal. (2d) 625 [42 Pac. (2d) 627]; *Townsend* v. *State Bar,* 4 Cal. (2d) 619 [51 Pac. (2d) 879]; *Wood* v. *State Bar,* 6 Cal. (2d) 533 [58 Pac. (2d) 1280]; *Price* v. *State Bar,* 8 Cal. (2d) 201 [64 Pac. (2d) 727].)

Nor do we find any merit in petitioner's contention that his offense, if any, was one of "mere negligence" which assertedly is not designated in the pertinent sections of the State Bar Act as one of the grounds warranting disciplinary proceedings against an attorney. Prior decisions of this court have resolved the issue against petitioner. In *Marsh* v. *State Bar,* 210 Cal. 303 [291 Pac. 583], the attorney complained against had accepted a fee to institute a divorce action, which he subsequently failed to do. Just prior to a hearing in the disciplinary proceeding based thereon, he repaid the fee. Upon such hearing he introduced in evidence a copy of a divorce complaint and testified that his secretary inadvertently had failed to file the same. He was recommended for suspension for one year. Before this court he contended that the evidence was insufficient, that his conduct amounted to mere negligence and, as here, that he could not be suspended on grounds other than those specified in the statute and rules of professional conduct. While in the early part of the decision this court intimated that the attorney's conduct bordered on "moral turpitude" within the meaning of subdivision 5 of section 287 of the Code of Civil Procedure, and that the recommendation of suspension implied a finding of such "moral turpitude", the decision further

declares that "It also appears that said acts and conduct of petitioner were of a character to warrant his suspension under the provisions of subdivision 2 of said section 287 [now section 6103, State Bar Act] to the effect that an attorney may be suspended for 'any violation of the oath taken by him, or of his duties as such attorney and counselor'. The oath referred to, required upon admission of a person to practice law, contains a pledge 'to faithfully discharge the duties of an attorney . . . to the best of his knowledge and ability'. (Sec. 278, Code of Civ. Proc. [now section 6067, State Bar Act].) Obviously, this petitioner . . . failed to discharge faithfully . . . his duties as an attorney in the instances under review".

Some four years later Marsh, the attorney involved in the foregoing case, was again cited for discipline upon his later acceptance of a fee from another client for the prosecution of an annulment proceeding, which he likewise failed to commence. He returned the fee after disciplinary proceedings were commenced. Again he advanced the defense of "negligence", urging that suspension therefor was not warranted under the statute. This court, among other things, declared that the "defense is without merit", adding a quotation from its prior decision to the effect that Marsh was "at least a careless and 'sloppy' practitioner, and that his negligence borders very closely upon moral turpitude. This type is not safe to represent clients in the practice of the law, particularly implicated, as he seems to be, in constant trouble with his clients over money matters, delays and *actual misrepresentation*". (*Marsh* v. *State Bar,* 2 Cal. (2d) 75, 79 [39 Pac. (2d) 403].)

In *Waterman* v. *State Bar,* 8 Cal. (2d) 17 [63 Pac. (2d) 1133], the petitioner therein was employed in March, 1935, to prosecute a divorce action and was paid a portion of his fee in advance. He thereafter told his client that he had filed and served a complaint when, in fact, and by mistake, he failed to file the original, though he served a copy together with a copy of summons the original of which never had been issued. He discovered his mistake in August, 1935, but did nothing until November when he had his client sign the complaint whereupon he filed it and again served the defendant. The local committee found that these acts involved dishonesty and moral turpitude "but were brought about by carelessness and negligence." It was recommended

by the board of governors that the petitioner therein be suspended for six months. Before this court he urged that "he had no intention to deceive or defraud but was guilty merely of carelessness and neglect which does not involve moral turpitude or warrant the six months' suspension recommended by the board of governors". Among other things, this court declared that "Gross carelessness and negligence constitute a violation of the oath of an attorney to 'faithfully discharge the duties of an attorney and counselor at law to the best of his knowledge and ability', (Code Civ. Proc., sec. 278) and involve moral turpitude in that they are a breach of the fiduciary relation which binds 'him to the most conscientious fidelity'. *Marsh* v. *State Bar,* 210 Cal. 303 [291 Pac. 583] . . . "

In 69 A. L. R. 705, 707, are collected, among others, cases in which "inattention to duty which has been wilful or accompanied by an element of deceit or imposition has been held ground for disbarment or suspension".

It is evident from the record herein that throughout the period of several years in which petitioner neglected and failed to have either the interlocutory or final decree entered that his conduct was not only of negligent inactivity but of active misrepresentation to his client who stated, before the local committee, among other things, that petitioner "says he does this and that and he doesn't do anything at all". It was only by reason of the saving grace of a recently enacted statute that the client was not made to feel the full burdensome effect of petitioner's protracted negligent inactivity and misrepresentation. Under the circumstances disclosed by the record we are satisfied that petitioner is without a meritorious defense both under the facts and the law.

It is, therefore, ordered that petitioner be and he is hereby suspended from the practice of the law in this state for a period of thirty days, effective upon finality of this decision.

CARTER, J., Dissenting.—I dissent.

I agree with that portion of the majority opinion which holds that the board of governors of the State Bar of California has the power to adopt the findings of fact of a local administrative committee in a disciplinary proceeding, and make a recommendation to this court that the discipline to be inflicted upon the member of the bar be greater or less than that recommended by said committee, providing the evidence

is sufficient to support such findings and recommendation, but I dissent from the portion of the majority opinion which holds that a member of the bar may be disciplined for negligent conduct in the handling of a legal matter entrusted to him where there is no showing of bad faith, misrepresentation or any form of moral delinquency accompanying the negligent conduct of such member.

The record before this court in the above-entitled cause discloses that this proceeding was instituted before local administrative committee No. 5 of The State Bar of California for the city and county of San Francisco. Petitioner was charged with the violation of his oath and duties as an attorney and counselor at law within the meaning of section 6103 of article 6 of the Business and Professions Code of the State of California, as the same are prescribed by sections 6067 and 6068 of article 4 of said code, and the commission of acts involving moral turpitude and dishonesty within the meaning of section 6106 of article 6 of said code.

The evidence produced at the hearing before said committee disclosed that some time prior to June 22, 1933, Mrs. Jeanette Schlessinger employed petitioner to represent her in an action for divorce in the superior court of San Mateo county. Petitioner agreed to handle Mrs. Schlessinger's case for the sum of $50, which amount was to cover attorney's fees and costs. This sum was thereupon paid petitioner. He thereafter commenced an action for divorce on her behalf, and the case was heard on June 22, 1933. At the conclusion of such hearing, the court made a minute order granting Mrs. Schlessinger an interlocutory decree of divorce. Petitioner failed to prepare a formal interlocutory decree and submit the same to the trial judge for his signature and nothing further was done by him in connection with said action until the latter part of 1939 when he had both the interlocutory and final decrees of divorce entered pursuant to section 131.5 of the Civil Code.

Mrs. Schlessinger testified before the local administrative committee that on numerous occasions she had requested petitioner to secure a final decree for her, but that he had failed and neglected to do so, and that she finally learned that for some reason, unknown to her, petitioner had failed and neglected to have the interlocutory decree of divorce entered. She also stated that she had not been in a hurry to secure the final decree, but that she was more or less disturbed

over the procrastination of petitioner. Petitioner testified in substance that he had learned that the parties had become reconciled and were again living together under the same roof, and for that reason failed to enter the interlocutory decree.

After finding the foregoing facts, the local administrative committee concluded:

"The Committee feels in this case that Mr. Trusty was not justified in assuming that the parties had become reconciled and that he was neglectful in not having the interlocutory decree of divorce entered.

"Outside of the anxiety which was caused his client, we do not feel that she was damaged materially in the delay, inasmuch as section 131.5 of the Civil Code came to her relief. However, we do feel the respondent should be reproved privately for his neglect which might have presented a serious problem."

The recommendation of the local administrative committee was that petitioner be privately reproved.

A record of the proceedings before the local administrative committee together with the findings and recommendation of said committee were transmitted to the board of governors of the State Bar of California, and without receiving any additional evidence, said board adopted the findings of fact of said committee but recommended to this court that petitioner be suspended from the practice of the law in the state of California for a period of thirty days.

It is, of course, elementary that in order to justify the recommendation that a member of the bar be disciplined, the record before the board of governors must be sufficient to support some charge of unprofessional conduct against such member denounced by the State Bar Act or the rules of professional conduct promulgated by the board of governors and approved by this court.

Turning to the record in the proceeding now before us, I find nothing therein which can be said to give support to a charge against petitioner involving moral turpitude, dishonesty or corruption, or a violation of any of the rules of professional conduct of The State Bar of California. The most that can be said regarding petitioner's conduct as disclosed by the record in this proceeding is, that he was negligent in not having the formal interlocutory decree of divorce entered forthwith after the hearing of the action for divorce,

or that he did not procure the entry of the final decree of divorce on behalf of Mrs. Schlessinger immediately upon her request after the expiration of one year from the entry of the interlocutory decree.

After a careful reading of the record in this case, I can find nothing in the conduct of petitioner in the handling of Mrs. Schlessinger's case or in his relationship with her as attorney and client which can be characterized as unprofessional conduct as defined in the State Bar Act or in the rules of professional conduct of The State Bar of California.

While I do not wish to be understood as sanctioning or condoning negligent conduct on the part of a member of the bar in the handling of matters entrusted to him in his professional capacity, I am of the opinion that mere acts of negligence which do not involve any element of moral turpitude, dishonesty or corruption are insufficient to constitute a ground upon which a disciplinary proceeding against a member of the bar can be instituted.

The term negligence is defined in California Jurisprudence as follows:

"Negligence is not an act itself, but a fact which defines the character of an act and makes it a legal wrong. It has been variously defined as the absence of care, the want of such care as a person of ordinary prudence would exercise under the circumstances of the case, the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs would do, or doing something which a prudent and reasonable man would not do, and as 'the failure to observe, for the protection of the interest of another person, that degree of care, protection and vigilance which the circumstances justly demand, whereby such other person suffers injury'. Negligence may be active or passive in character and may consist in heedlessly doing an improper thing or in heedlessly refraining from doing a proper thing. One who does not do what he should do is chargeable with negligence equally with him who does that which he should not.

"Although no difficulty attends an attempt to define negligence in the abstract, the application of definitions to concrete facts gives rise to serious controversy. Negligence is a comparative and not a positive term, whether applied to the acts of a plaintiff or of a defendant. It is determined in all cases by reference to the situation and knowledge of the

parties and to all the attendant circumstances. What would be extreme care under one condition of knowledge and one set of circumstances, might be gross negligence with different knowledge and changed circumstances. Of necessity the question is nearly always one of fact for the jury." (19 Cal. Jur., sec. 4, pp. 547–550.)

While the above-quoted definition of negligence is somewhat all inclusive, it will be observed therefrom that a person may be guilty of negligent conduct without having any intention whatever to injure another and without being motivated by bad faith or dishonesty, or guilty of the violation of any recognized moral code.

It cannot be gainsaid that a disciplinary proceeding against a member of the bar is *quasi*-criminal in nature and carries with it the odium of such a proceeding. Technically speaking, crimes are divided into two groups; that is, those acts which are classified as bad in themselves or *malum in se*, and those acts which do not constitute a violation of any recognized moral code but are prohibited by statutory law and are classified as *malum prohibitum*, or bad because they are prohibited by law. Negligence must necessarily fall in the latter class. Therefore, unless it can be said that the State Bar Act denounces mere acts of negligence on the part of an attorney in the handling of his client's legal matters as unprofessional conduct, and authorizes the infliction of discipline upon members of the bar who may be found guilty of negligent conduct, there is no basis in the law of this state for a charge of unprofessional conduct against a member of the bar arising out of negligent conduct alone. (9 Cal. Jur. 10 Yr. Supp., sec. 43, p. 392; *In re Collins,* 147 Cal. 8 [81 Pac. 220] ; *Lantz* v. *State Bar,* 212 Cal. 213 [298 Pac. 497] ; *Howe* v. *State Bar,* 212 Cal. 222 [298 Pac. 25].)

An examination of the State Bar Act fails to disclose any provision therein denouncing acts of negligence on the part of a member of the bar as unprofessional conduct warranting the infliction of discipline, and I am therefore of the opinion that such acts do not constitute a basis for a disciplinary proceeding against a member of the bar of this state.

The foregoing proposition is supported by the following quotation from California Jurisprudence Supplement:

"Carelessness or negligence in the conduct of a client's business is not among the grounds for removal or suspension which are enumerated by statute. Such conduct is ground

for discipline, however, if it is of such a character as to come within the statutory provision that an attorney may be removed or suspended 'for the commission of any act involving moral turpitude, dishonesty or corruption'.

"It seems to be the prevailing view in other jurisdictions that inattention to duty constitutes ground for disciplinary action only when it is accompanied by some form of moral delinquency." (9 Cal. Jur. 10 Yr. Supp., sec. 62, pp. 410–11.)

My attention has not been called to any case in this or other jurisdictions where discipline was inflicted upon a member of the bar for conduct consisting of mere acts of negligence alone where there was no showing of bad faith, misrepresentation or some form of moral delinquency accompanying the negligent conduct of the attorney.

The majority opinion cites and relies upon the cases of *Marsh* v. *State Bar*, 210 Cal. 303 [291 Pac. 583], and *Marsh* v. *State Bar*, 2 Cal. (2d) 75 [39 Pac. (2d) 403], in support of its holding that mere negligent conduct of an attorney is sufficient to justify the infliction of discipline under the provisions of the State Bar Act. These cases do not support the position of the majority of this court in the conclusion reached by it in this case, as a reading of these cases discloses that the conduct of petitioner, which was the subject of the disciplinary proceeding reviewed therein, involved dishonesty and misrepresentation which amounted to moral turpitude and both the local administrative committee and the board of governors and this court found that his conduct was not merely negligent but that he was guilty of intentional wrongdoing amounting to moral turpitude. In the first Marsh case reported in 210 Cal. at page 307, this court said:

"But petitioner argues, conceding that he was guilty of such carelessness and negligence, these elements are not grounds for suspension. In other words, section 287 of the Code of Civil Procedure, which states the grounds upon which an attorney may be removed or suspended by this court, makes no mention of carelessness and negligence. Subdivision 5 of said section, however, provides that an attorney may be removed or suspended 'For the commission of any act involving moral turpitude, dishonesty or corruption . . . ,' *and if the conduct of petitioner* and his gross negligence and carelessness come within this definition such conduct and acts constitute sufficient grounds for his suspension. *The recom-*

*mendation of the board of governors itself implies a finding
that the acts committed by him involved moral turpitude,
dishonesty or corruption. But aside from this fact, how peti-
tioner's misrepresentations to the complainants, after his
acceptance of a fee from them, can be classed as other than
outright dishonesty, is hard to understand.* Neither can it
be denied that the breach by petitioner of the confidential
relation—a fiduciary relation of the very highest character,
binding him to the most conscientious fidelity—between him-
self and his said clients involved moral turpitude. The defi-
nition of turpitude as anything done 'contrary to justice,
honesty, modesty or good morals' has long been approved by
this court. (*In re O'Connell,* 184 Cal. 584, 587 [194 Pac.
1010, 1012] ; *Matter of Coffey,* 123 Cal. 522 [56 Pac. 448].)
See, also, *Matter of Humphrey,* 174 Cal. 290, 295 [163 Pac.
60, 62), wherein it is said: 'Moral turpitude is misconduct
by an attorney in reference to his duties and obligations as
such attorney—conduct, in fact, which is contrary to justice,
honesty, modesty, or good morals'.

"It also appears that said acts and conduct of petitioner
were of a character to warrant his suspension under the pro-
visions of subdivision 2 of said section 287, to the effect that
an attorney may be suspended for 'any violation of the oath
taken by him, or of his duties as such attorney and counselor'.
The oath referred to, required upon admission of a person
to practice law, contains a pledge 'to faithfully discharge the
duties of an attorney . . . to the best of his knowledge and
ability' (sec. 278, Code Civ. Proc.). Obviously, this peti-
tioner not only failed to discharge faithfully, but failed to
discharge in any way whatsoever his duties as an attorney
in the instances under review. See *In re Morganstern,* 61
Cal. App. 702, 708 [215 Pac. 721], holding that where the
alleged acts of an attorney are such that they show moral
turpitude, dishonesty or corruption in violation of his duties
as an attorney and committed in the course of the practice
of his profession, he may be proceeded against under either
subdivision 2 or subdivision 5 of said section 287 of the Code
of Civil Procedure, and under subdivision 2 there is no limi-
tation upon the power of the court to entertain a motion for
his removal or suspension."

In the second Marsh case reported in 2 Cal. (2d) at pages
77 and 78, this court said:

*"From these facts the local administrative committee concluded that petitioner was guilty of acts involving moral turpitude, dishonesty and corruption* (subd. 5, sec. 287, Code Civ. Proc.), and of violation of his oath and duties as an attorney. (Subd. 2, sec. 287, Code Civ. Proc.) It further found that on September 24, 1930, in another disciplinary proceeding where the facts were similar to those here shown, this court ordered petitioner's suspension from practice for one year (*Marsh* v. *State Bar,* 210 Cal. 303 [291 Pac. 583]) and that petitioner there presented the same defense of 'negligence' as pleaded here, which defense is without merit. The committee quoted from said reported case the following remarks of one of the members of the board of governors of the State Bar: 'A review of the facts of these three cases under consolidation would indicate that the respondent is at least a careless and 'sloppy' practitioner, and that his negligence borders very closely upon moral turpitude. This type is not safe to represent clients in the practice of the law, particularly implicated, as he seems to be, in constant trouble with his clients over money matters, delays and actual misrepresentation.' (*Marsh* v. *State Bar, supra,* p. 306.)

"The committee further found that the above comments were as applicable to the present proceeding as to the former 'except as to the discipline recommended, which, in view of respondent's former record, should be greater'. It therefore recommended petitioner's suspension for a period of three years, as aforesaid.

"Petitioner contends that the present record, considered without reference to his prior wrong-doing, falls far short of showing facts sufficient to justify his suspension, and certainly not a three-year period of suspension. He asserts that he has already suffered full punishment for the former wrongdoing and should not now be punished a second time for it, as contemplated by the recommendation made. *The State Bar replies that the court must consider its opinion in the earlier proceeding, which characterizes petitioner's misrepresentations to his clients as 'outright dishonesty', and therefore the proposed penalty is just."*

It must be remembered that the local administrative committee in the case at bar found that petitioner was *"neglectful"* only. This finding was adopted by the board of governors, and there is nothing in the record to justify any other finding or conclusion. In view of this state of the

record, there is no basis whatever for holding that petitioner was guilty of any act involving moral turpitude, dishonesty, corruption, bad faith, misrepresentation or any form of moral delinquency accompanying his negligent conduct in the action which was the subject matter of the disciplinary proceeding against him. It is obvious, therefore, that the two Marsh cases cited above cannot be relied upon as authority to support the recommendation made by the board of governors that petitioner be disciplined by suspension from the practice of law for the period of thirty days for his conduct in said action.

The same situation as that disclosed by the above quotations from the two Marsh cases existed in the case of *Waterman* v. *State Bar,* 8 Cal. (2d) 17 [63 Pac. (2d) 1133], also cited in the majority opinion. In that case the local administrative committee found that petitioner was guilty of acts involving dishonesty and moral turpitude. The board of governors adopted this finding and this court sustained the recommendation for discipline upon the ground that the acts of petitioner involved moral turpitude in that they constituted a breach of the fiduciary relationship with his client. As pointed out hereinabove, there is no such finding by either the local administrative committee or the board of governors in the case at bar and the record before us is insufficient to support such a finding or any other finding than that petitioner's conduct was *"neglectful"* only.

The majority opinion ignores the findings of the local administrative committee when its states:

"It is evident from the record herein that throughout the period of several years in which petitioner neglected and failed to have either the interlocutory or final decree entered that his conduct was not only that of negligent inactivity but of active misrepresentation to his client . . . "

I do not understand it to be the function of this court to change the findings of fact made by a local administrative committee in a disciplinary proceeding and approved by the board of governors, especially when those findings are in accordance with the record.

The majority opinion is confusing in that it is impossible to determine therefrom whether the majority of the court are of the opinion that mere negligent conduct of an attorney which does not involve any element of bad faith, misrepre-

sentation, dishonesty or some form of moral delinquency accompanying the negligent conduct can be made the subject of a disciplinary proceeding under the State Bar Act or the rules of professional conduct of The State Bar of California. Some of the language of the majority opinion is susceptible of the interpretation that such conduct may justify discipline, but the court appears to rest its conclusion that discipline is justified in this case on the ground of certain alleged misrepresentations made by petitioner to his client. As stated before, the record does not support such conclusion, and it is not clear what the conclusion of the majority of the court would have been if its opinion had been confined exclusively to the record.

In view of what I have said in the foregoing opinion, the proceeding against the petitioner herein should be dismissed.

Rehearing denied. Carter, J., voted for a rehearing.