[L. A. No. 17850.   In Bank.—Oct. 1, 1941.]

PAUL H. BRUNS, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Paul H. Bruns *in pro. per.*, L. J. Styskal and M. E. Barth for Petitioner.

W. Eugene Craven and Joe Crider, Jr., for Respondent.

THE COURT.—In two separate proceedings instituted before a local administrative committee of The State Bar of California, petitioner was charged with (1) acceptance of a fee from a client upon false assurances that a suit would be filed, misrepresenting to the client that suit had been filed although no legal services of value were performed, and (2) misuse of funds, failure to defend legal actions, refusal to account for funds received, and other professional misconduct in connection with petitioner's employment as an attorney by members of a milk producers' association.

In the first proceeding the local committee recommended that petitioner be suspended from the practice of law for a period of three months. In the second proceeding the committee recommended, on the basis of the facts found together with petitioner's past record, a three year period of suspension. The causes were consolidated for presentation to the Board of Governors. When petitioner failed to appear before the board at the appointed time, after a postponement of the hearing had been granted at his request, the matter was taken under submission upon the record made before the local committee together with petitioner's past record. The past record included a public reproval administered by the board on September 21, 1929, in disciplinary proceedings L. A. No. 284 and No. 285, and a three months' suspension ordered by this court on July 17, 1931. (*Bruns* v. *State Bar*, 213 Cal. 151 [1 Pac. (2d) 989].) Upon reviewing these records the board adopted the findings of the local committee, but recommended that petitioner be disbarred.

Petitioner contends that after adopting the findings of the local committee, the Board of Governors had no jurisdiction to order a discipline more severe than that recommended, without first hearing the cause *de novo* or taking additional evidence. A complete answer to this contention is found in *Trusty* v. *State Bar*, 16 Cal. (2d) 550 [107 Pac. (2d) 10], and cases there cited. See also *Maggart* v. *State Bar*, 7 Cal. (2d) 495 [61 Pac. (2d) 451]. Petitioner argues that if he had known that his punishment might be increased he would have appeared before the board. His absence was of his own volition, however, after full opportunity to testify had been accorded him, and affords no basis for compelling the board to accept the committee's recommendations or to limit its jurisdiction.

The findings of the local committee correctly represent the facts shown by the record in each proceeding.

*First Proceeding, L. A. No. 1023 (3774):*

In 1939 one C. H. Englesby, who had first met petitioner a few weeks previously, consulted him as an attorney, presenting to him the case of his sister-in-law, Eliza Jane Fear, a destitute blind woman, over 80 years of age, who many years before had loaned her brother James various sums of money totaling, with interest, about $10,500, which he had failed to repay. The brother signed a note which was subsequently lost. A substantial portion of the amount borrowed was used to educate his two daughters. Mr. Englesby asked petitioner whether the money could be collected from the daughters, and petitioner advised that in his opinion not only did a good cause of action exist against them, but they could be compelled to contribute to their aunt's support. He agreed to handle the case for a fee of $100 and an additional $27.50 for costs. These sums, he was told, would be saved by the aunt from her monthly pension check.

On August 5, 1939, Mr. Englesby paid petitioner $80 on the fee, and thereafter $12 toward costs, and petitioner promised to file suit. On November 5, 1939, he told Mr. Englesby that an action had been filed. This statement was untrue. At the hearing before the local committee petitioner claimed that under his fee arrangement he was not obligated to file suit until the full amount of the fee was paid. He advanced the necessity for research as another excuse for his failure to act. Very little research would have revealed that no cause of action existed in favor of the aunt against her nieces either for support or for the money loaned their father. The local committee gave petitioner every opportunity to make restitution before taking action on the charge against him. On May 29, 1940, he stated that he believed he could restore the money to his client within fifteen or twenty days. On August 21st, three months later, he had only repaid $65, and claimed that it had been impossible for him to raise the rest of the money.

Petitioner now argues that the evidence does not justify an order of suspension or disbarment. He states that the giving of erroneous advice through ignorance is not punishable, and that he honestly believed that a cause of action existed when he so informed Mr. Englesby. In plead-

ing for leniency he asserts that he was under a physical and mental strain at the time in question, and that he has attempted to make restitution. These factors, however, cannot excuse either the failure to take any action after most of the agreed fees had been collected, or the misrepresentation to the client that an action had been filed. The evidence on this matter would warrant the imposition of a longer period of suspension than the three months recommended by the local committee, and considered in conjunction with petitioner's record of other misconduct, it affords strong support for the order of disbarment recommended by the Board of Governors.

*Second proceeding, L. A. No. 1005 (3711):*

In February, 1938, certain milk producers, assisted by petitioner and one Gray, organized the Producers' Cooperative Creamery Company, a copartnership, for the purpose of processing and selling their milk at better prices than those previously received from dairies. The producers, of Holland Dutch descent, had difficulty in speaking or understanding the English language, and relied upon petitioner to advise them. They were unsuccessful in their business and in July, 1938, they decided to leave the plant they had leased and to abandon operations. During the period from February to July, 1938, petitioner acted as attorney for Mr. Gray and for the producers, but he had nothing to do with the management of the business or the funds. Mr. Gray, however, was also interested in a selling organization called the Dairy Guild. He and petitioner succeeded in obtaining the permission of the producers to sell their milk, after it was processed at Guernsey Gold Seal Farms. In August, 1938, this arrangement was put into operation. The producers delivered milk to the Guernsey Gold Seal Farms for processing. It was then sold by Mr. Gray, doing business as the Dairy Guild. Petitioner participated actively in the enterprise and opened a "trustee" account with the bank. All funds collected by Mr. Gray from milk sales, less certain expenses and salaries, were delivered to him, and he had complete control of this money. In the beginning from $30 to $35 was turned over to him daily, but the receipts dwindled to nothing in a period of approximately sixty days because the producers were dissatisfied and supplied less and less milk. Petitioner drew checks on the "trustee" account in

favor of the producers and others. Some of these checks were returned for insufficient funds. After the institution of criminal proceedings part were paid; others still remain unpaid. Demands were made upon petitioner for an accounting and on numerous occasions he promised to furnish it, but failed to do so. It was not until July 25, 1940, at the last hearing before the local committee in the present proceeding, that he explained for the first time that he was unable to make an accounting because his records had been destroyed in a flood at Tujunga. The record substantiates the committee's finding that this was improbable.

Between August and December, 1938, petitioner undertook to represent the producers in litigation arising out of their abandonment of the plant leased by them and the unsuccessful operation of their business from February to September, 1938. Three suits were brought against the producers. In *Kurtz* v. *Wassenaar et al.*, L. A. Municipal Court No. 484,614, an action for rent, there was no defense, and a default judgment was entered against the producers in May, 1939.

In *Guernsey Gold Seal* v. *Wassenaar*, L. A. Municipal Court No. 497,197, petitioner served and filed an answer and cross-complaint on behalf of the producers. The plaintiff, however, without the knowledge of petitioner, secured from each of the defendant producers an affidavit denying petitioner's authority to represent them. Upon the basis of these affidavits a motion to strike the answers and cross-complaints was granted, and a default judgment was entered. Apparently the producers did not fully understand the meaning or possible effect of their affidavits, but, so far as the evidence shows, petitioner was entitled to and did rely upon them. He therefore advised the counsel for the plaintiff in the third action (*Keeley* v. *Wassenaar et al.*, Los Angeles Superior Court No. 433,791), in which he had been securing oral and written extensions of the time for appearance, that his authority to represent the defendant producers had been repudiated.

The evidence regarding petitioner's failure to defend the legal actions properly and regarding other phases of the matters charged was inconclusive, and the local committee concluded that petitioner did not violate his duties as an attorney in any of the respects charged except in his refusal

and failure to account for funds handled from August to October, 1938. Petitioner offered no credible explanation for his failure to keep a record of the funds received by him in trust for the producers and disbursed by him on their behalf. The lack of any financial statement or report made it impossible to determine whether petitioner had actually misappropriated any of the funds entrusted to him and his excuses for this, negligent handling of his client's affairs only beclouded the question.

The findings and conclusions of the committee are amply supported by direct evidence of petitioner's failure to account and other acts of negligence and omission. Petitioner contends, however, that even if the committee's conclusions are correct, his violations of duty involved no moral turpitude and were not of sufficient consequence to serve as the basis of either a prolonged suspension or disbarment. He argues that as he was neither the collector of sales receipts nor the bookkeeper for the business, he was under no obligation to produce a record of the funds of his clients which were delivered to him in trust and disbursed by him under his complete control. This argument demonstrates a lack of understanding of the duties and obligations arising out of a fiduciary relationship. It would be a distortion of justice to permit a trustee, or attorney handling funds of a client, to escape responsibility by the simple act of not keeping any record or data from which an accounting might be made.

Repeated acts of negligence and omission may involve moral turpitude and prove as great a lack of fitness to practice law as affirmative violations of duty. (*Marsh* v. *State Bar*, 210 Cal. 303 [291 Pac. 583]; *Marsh* v. *State Bar*, 2 Cal. (2d) 75 [39 Pac. (2d) 403]; *Waterman* v. *State Bar*, 8 Cal. (2d) 17 [63 Pac. (2d) 1133]; *Trusty* v. *State Bar, supra.*) The evidence here discloses a complete disregard for the fiduciary relation of an attorney to his clients and an absence of fair dealing in handling the affairs of ignorant, credulous, or impecunious clients. (See *Stanford* v. *State Bar*, 15 Cal. (2d) 721 [104 Pac. (2d) 635].)

The consolidated record of the present proceedings, considered in conjunction with petitioner's past record (*Bruns* v. *State Bar, supra*), attests the correctness of the conclusion that the public interest will be best served and protected

by petitioner's removal from practice. (*Marsh* v. *State Bar*, 2 Cal. (2d) 75 [39 Pac. (2d) 403]; *Kennedy* v. *State Bar*, 13 Cal. (2d) 236 [88 Pac. (2d) 920].) Although ten years have elapsed since the previous disciplinary proceedings against petitioner, in which he was suspended for a period of three months for deliberately misleading the court by a false averment as to custody of a minor in a petition for adoption, it is apparent that the discipline then administered did not succeed in imparting to him an understanding of the duties of an attorney to his clients and to the public.

It is ordered that petitioner be disbarred from the practice of law in the courts of this state, effective thirty days after the filing of this decision.

CARTER, J., Dissenting.—I dissent.

While the facts found by the local administrative committee with reference to the misrepresentation made by petitioner that he had filed an action on behalf of his client when he had not done so, and his failure to render an accounting of money received by him in trust are sufficient to justify disciplinary action against him, I cannot agree with the holding in the majority opinion that a member of the bar can be subjected to a disciplinary proceeding for mere negligent conduct.

I still hold to the views expressed by me in my dissenting opinions in the cases of *Trusty* v. *State Bar*, 16 Cal. (2d) 550, 554 [107 Pac. (2d) 10], and *In re McKenna*, 16 Cal. (2d) 610, 612 [107 Pac. (2d) 258], and I disagree with everything said in the majority opinion in the instant case contrary to the views expressed by me in said dissenting opinions.

Houser, J., concurred.

Petitioner's application for a rehearing was denied October 30, 1941. Carter, J., voted for a rehearing.